## Richmond.

### MYERS AND WIFE v. WILLIAMS, TRUSTEE, AND ALS.

#### January 10th, 1889.

1. USURY.—Where there is no loan, or a forbearance to collect an existing debt, there can be no usury.
2. IDEM—*Case at bar.*—Debtor's property having been sold under decree, she agreed with R. that if he would set aside the sale and give her a reasonable time to pay for it, she would pay him $1,000. R. put in upset bid, and the sale was set aside. Later, the liens having been ascertained to be $4,441.83, exclusive of interest and costs, she conveyed the property to R. "for $6,000 cash in hand paid," but really that R. pay off the liens, etc., and the balance of $6,000, if any, to her. Same day R. agreed to resell her the property at $7,000, payable, with interest payable annually, in ten equal annual instalments. After R. had paid off said liens, etc., she being in default on her part, he brought his bill to enforce his lien for the unpaid price of the resale, and she pleaded usury;

HELD:

  The transaction has no characteristic of usury.

Argued at Staunton, decided at Richmond.   Appeal from decree of circuit court of Shenandoah county, rendered January 10th, 1888, in the consolidated chancery causes of A. J. Myers and wife, complainants, against W. T. Williams, trustee, defendant; Shenandoah County Bank, complainants, against A. J. Myers, &c., defendants; John P. Lonas, complainant, against same defendants; Samuel P. Lonas, complainant, against same defendants; Lonas & Brother, complainants, against same defendants; and John E. Roller, complainant, against same defendants.

The case is as follows: Fyanna E. Myers, wife of A. J. Myers, owned, as her separate estate, three parcels of land in said

county, known as the Shenandoah Alum Springs property, containing in the aggregate one thousand and one acres. By deed, dated September 5th, 1878, she and her husband conveyed this property, and the personalty thereon, to W. T. Williams, trustee, in trust to secure to G. R. Watkins the repayment of a loan of $4,000. The grantors failing to pay according to the terms of the trust deed, the trustee advertised the property for sale. But the sale was enjoined by the writ awarded on the motion of Myers and wife by the judge of said circuit court. By the decree of same court of December 16th, 1882, it was adjudged that Watkins was entitled to recover $3,500 and his costs; and, by consent of parties it was further adjudged that $1,000 thereof should be payable November 1st, 1883, $833.33 December 15th, 1884, and like sums December 15th, 1885, and December 15th, 1886—all with interest from December 15th, 1882. It was, however, ordered that in case of default of compliance with this decree, the injunction should stand dissolved, and said trustee be authorized to sell the property. And such default having occurred, the trustee, in pursuance of the terms of the trust deed, did advertise and sell the said property to H. C. Allen at the price of $4,110. The sale was reported, but the court refused to confirm it, John E. Roller, at the instance of the grantors, having, on the 14th day of December, 1883, put in an upset bid of $4,810, and directed one of its commissioners in chancery to ascertain and report all the liens upon the property. On the day this upset bid was entered, Myers and wife executed their bond agreeing to pay to John E. Roller $1,000 "if he would save the property from sacrifice at a forced sale, and would buy it in and give them a reasonable time to pay for it."

The commissioner, in his report to April term, 1884, stated liens to the amount of $4,441.83, exclusive of interest and costs. In the meantime the suits of Samuel H. Lonas, of John P. Lonas, of Lonas & Brother, and of the Shenandoah County Bank against A. J. Myers and wife, had been matured, and at that term were heard together with the suit aforesaid of A. J.

Myers and wife against W. T. Williams, trustee, and others, when the report of liens was confirmed; and it was decreed that unless within sixty days from the rising of the court, A. J. Myers and wife, or some one for them, should pay $1,000, with interest from December 15th, 1882, less $90 as of October 20th, 1883, that being the amount then due, to G. R. Watkins, and also one-fifth of the judgments reported in favor of Fisk, Bro. & Co., Witz, Biedler & Co., Samuel H. Lonas, J. P. Lonas, and Lonas & Bro., and also one-fifth of three notes set up in suit of Shenandoah County Bank against Myers and wife, and the unpaid costs of these causes, then W. T. Williams, as trustee and special commissioner, should make sale of the said property, and that, by consent of all the parties except G. R. Watkins, if said Myers and wife, or some one for them, should pay the instalments to G. R. Watkins as they mature, and the debt to J. W. Miller in two years from the date of the decree, and annually, in equal instalments, the remaining four-fifths of the other debts, no steps should be taken to subject the said property for the same.

Myers and wife, conscious of their inability to make the payments in obedience to the decree, on the 15th of April, 1884, sold and conveyed the said real and personal property to John E. Roller for $6,000 "cash in hand paid," as expressed in the deed. But the real consideration, as shown by the evidence, was that Roller should pay off all the liens aforesaid according to the provisions of the decree of April term, 1884, and all his own expenses and the amount due him by the bond of December 24th, 1883, for services already and to be rendered, and the balance of $6,000, if any, was to be paid to Mrs. Myers. And on the same day Roller, by a writing under seal, executed by him and by Mrs. Myers, resold the said property to her at the price of $7,000, to be paid in ten equal annual instalments, with interest from that date, payable annually, the title to remain in him until the purchase-money was wholly paid. And it was further stipulated that the excess, if any, of the sum of $6,000 afore-

said over said liens, expenses and other proper charges, shall be credited to Mrs. Myers. It appears in evidence from the report of a commissioner in chancery, to whom these causes had been referred, dated August 20th, 1886, that on the said liens John E. Roller paid $1,314.66 on June 12th, 1884, $1,528.27 on May 12th, 1885, $28.52 expenses, $800 January 30th, 1886, and $190.50 August 13th, 1886, making an aggregate of about $3,933.58. Whilst, on the other hand, Mrs. Myers had paid none of the instalments of the $7,000, and had not even paid all of the accrued interest by $137.66.

Under these circumstances John E. Roller urged her to pay the amount then due him according to the stipulations of his agreement of resale to her. This she was unable to do. He then proposed to satisfy all of the unpaid liens if she would execute a deed of trust on the property to secure him and save him from the delay and costs of a chancery suit. This she refused, contending that he was to pay all the liens off before she was to be called on to pay a dollar of her re-purchase money. It is proper here to say that in part payment of accrued interest, she and her husband had given Roller a negotiable note for $496.93, which was endorsed by C. S. R. Moore, and which had been assigned to R. A. Harrison, by whom, the note having been protested for non-payment, judgment thereon was obtained, which judgment had not been paid by the makers, and hence remained a lien on the property.

This state of affairs remained unchanged until August, 1887, when John E. Roller filed his original bill in said circuit court against A. J. Myers and wife and others, setting out the facts of his purchase and resale of the property to Mrs. Myers, of his engagement to pay off the liens in accordance with the provisions of the decree, the amount he had paid on them, the amount which remained unpaid, as well as the sum which was unpaid of the amount which she agreed to pay him for the property; and, waiving answers on oath, prayed that his lien for his due and unpaid purchase-money be enforced.

To this bill Myers and wife filed their answer denying that the amount unpaid by her upon the re-purchase was as much as "$7,137.66, subject to credit for $190.54," even including the bonus of $1,000; charging that the real contract between them was that Roller was to advance them money enough to pay off the debts audited against them in the chancery suits, and in consideration thereof they were to pay him the amount so advanced, with legal interest thereon, and a bonus of $1,000; that the entire transaction was tainted with usury; that the payment of the whole of said debts was a condition precedent to any re-payment by them, yet that they had nevertheless paid the interest annually on the amount advanced, and more than legal interest even on that amount; and that Roller, after advancing part of the amount agreed to be loaned, stopped, and refused to pay any more, and that the sale of the property had been pressed at every term of the court for the very debts which Roller had contracted to pay.

The depositions of both Myers and his wife were taken, though he was objected to as incompetent to testify, his wife being a party and interested. On the other hand, the deposition of the complainant, Roller, was taken in his own behalf. That deposition is accompanied by letters from both of the respondents, and also of their attorney, wherein the $1,000, called by them in their answer "a *bonus*," is spoken of as "a fee for Roller's services."

This cause having been matured, was heard at the September term, 1887, together with the other causes mentioned above. At the hearing the master's report of August 20th, 1886, which has already been referred to, was confirmed. And it appearing from said report that the following sums remained unpaid to the said lien holders, to-wit: To G. R. Watkins, $792.62; to Fisk, Bro. & Co., $118.92; to Lonas & Bro., 116.92, with interest on $109.27; to J. W. Miller, $108.79, with interest on $8.66; and to the Shenandoah County Bank, $190.67, interest on all these sums from August 13th, 1886; and to Samuel P. Lonas, $33.92,

with interest on $30.02 from June 12th, 1884; and to John P. Lonas, $10.17, with interest from March 19th, 1884; and it appearing to the court, from papers in the causes, that John E. Roller waiving all claim to the said $1,000, there is still due him from Myers and wife, under the deed and contract between him and them, the sum of $3,933.58, with interest on $1,332.81 from June 12th, 1884; and on $1,532.27 from May 12th, 1885; on $800 from January 30th, 1886; on $12.50 from January 9th, 1886; on $25 from January 9th, 1886; on $6 from July 1st, 1886; on $25 from June 13th, 1887, subject to a credit for $300 as of April 14th, 1885, and of $499.17 as of October 21st, 1886, when and if the negotiable note held by R. A. Harrison is paid by the said Myers and wife, or by their endorser, C. A. R. Moore, the court further adjudged, ordered and decreed that the said Roller do recover of the said Myers and wife the said amount due him, subject to the credits aforesaid; the last credit being on the condition aforesaid; and that for said amount so due to him, said Roller is entitled to a lien on the real and personal property of said Myers and wife, but subordinate to the liens of the creditors first above named; and the court doth further adjudge, order and decree that unless Myers and wife, or some one for them, shall, within sixty days from the rising of this court, pay the above debts and the unpaid costs of these suits, then the real and personal estate of the said Myers and wife, embraced in the said deed and contract, or so much thereof as may be necessary, shall be sold and the proceeds applied to the payment of the said debts in the order of their priority.

The debts not having been paid as required by the decree, the commissioners of sale appointed by the court advertised the said real and personal property for sale, and sold it as directed. John E. Roller became the purchaser at the price of $5,000, and complied with the terms of sale, and the sale was reported to court; but its confirmation was resisted. 1st. Because the day of sale was inclement and only a few bidders were present. 2d.

Because the amount of the debts is not certain as set forth in the decree of sale, the Harrison debt not being determined as paid or unpaid.   3d. Because the land was advertised as the property of one *Fryanna* E. Myers instead of Fyanna E. Myers. 4th. Because she was not consulted (as the decree directs) whether the real or the personal property should be first sold.   5th. Because the mineral lands were not advertised as to their value and especial attention called to them.

These exceptions were overruled by the court, and the sale was confirmed by its decree of January 10th, 1888.  From that decree A. J. Myers and wife obtained from one of the judges of this court an appeal and writ of *supersedeas*.

*A. C. Braxton, Wm. E. Craig,* and *Rockingham Paul,* for appellant.

*John E. Roller,* for appellees.

RICHARDSON, J. (after stating the case), delivered the opinion of the court.

After a most careful examination of the record in this case, we feel constrained to say that we have not been able to discover in the transactions of the appellee with the appellants anything savoring in the slightest degree of that harshness and oppression so lavishly but unjustly attributed to him.   We have, too, maturely considered all the objections urged against the decree appealed from, and we find no error therein.   We can, therefore, announce no other conclusion than that the decree is in accordance with the principles of equity jurisprudence, as well as consonant with the plain teachings of common sense and common honesty.   By that decree the appellee is allowed only the amount actually paid out by him in satisfaction of liens which bound the property of the appellants, with the addition

of the small amount charged for his expenses, he having voluntarily waived any claim to the $1,000 which they had agreed to pay him, not as a *bonus,* but " as a fee for his services."

The first assignment of error which we shall notice is : That the transaction between the appellee and the appellants relative to their sale and conveyance to him of the Shenandoah Alum Springs property, and his cotemporaneous resale of the same to Mrs. Myers, was *usurious.*  This assignment appears to be based on two grounds: 1st. That the agreement for the resale exacts the same interest, $420, on the whole price, $7,000, every year, although the payment of an instalment of $700, was required to be made every year, and although the annual instalment be punctually paid.  It is only necessary to say that this is a strangely erroneous construction of the agreement ; and no statement of the appellee's demands embraces any such exaction.  And the second ground involves an equally mistaken view both of the facts and of the law of the case.  It is this : That the $1,000 which Myers and wife agreed to pay to Roller as a fee for his services, and for the payment of which they gave him a bond on 24th December, 1883, which was added to the sum of $6,000, the price at which they sold him the property, and making the price of the resale thereof to them $7,000, was only a shift and contrivance to cover the exaction of usurious interest.  The mere statement of the proposition in language which is consistent with the facts as disclosed by the record, is its ample refutation. . That it was regarded as " a fee" is shown by the correspondence.  The female appellant, in her letter of April 16th, 1886, speaks of " the agreement for the fee of one thousand dollars."  Her counsel, Mr. Paul, in his letter of September 8th, 1886, says: " Mrs. Myers requests me to ask you for a copy of the agreement between you and her husband and herself, binding their property for a fee of $1,000 for legal services in regard to the Shenandoah Alum Springs property."  In her letter of January 30th, 1884, Mrs. Myers

says : "I would give you $1,000 fee for your services." The correspondence shows also what the services had been and were to be.

But how could buying the property at $6,000, and selling it at $7,000, payable in ten annual instalments, be *usurious*, when no loan, or forbearance to collect an existing debt, was intended, and when it is not possible to deduce any such intent from the nature of the transaction or the surrounding circumstances-? If A proposes to sell B a tract of land for $5,000 cash, or $8,000 on five years' time, and B prefers to pay the larger sum to gain time, where is the *usury* ? Such a contract has none of the characteristics of usury. See Justice Green in *Hoyg* v. *Ruffin*, 1 Blach. 118. In *Bute* v. *Brogood*, 7 Barn. & Cress. 453 (14 Eng. C. L. R.) there was an agreement founded partly on what was considered the present price of an estate, and partly upon what was considered its price if paid for at a future day. Some difficulty arose from calling the difference, interest. But the court, looking at the substance of the transaction, held it not to be usurious. In *Hansbrough* v. *Peck*, 5 Wall., on p. 507, Mr. Justice Nelson, delivering the opinion of the court, said that if the excess of interest stipulated for was in fact a part of the purchase money, the arrangement would not be usurious. In *Long* v. *Israel*, 9 Leigh, 556, A agreed that B might buy C's land as cheap as he could, and that he would give B $900 for it. B bought it at $750, and the land was conveyed to A, who gave B his note for the $900. *Held*, not usury.

So it is plain that if the excess is contracted for in good faith, to cover reasonable expenses and charges, it will be sustained. *Campbell* v. *Shield*, 6th Leigh, 517. In *Jones* v. *Hubbard*, 6th Call, 211, where A agreed to buy B's land, that was to be sold under a trust deed, at the amount of the creditor's debt and sell it to B for a sum thereafter to be agreed on, payable in twelve months, which sum (though never agreed on), was understood to be such sum as would reimburse A the money paid, the sacrifices he might make to obtain it, and liberally compensate him

for his trouble, it was held by the court that such arrangement was not usurious. Nor can it be gainsaid that that case is, in principle, wholly in unison with the case at bar.

It is objected, too, that the court decreed the sale without it appearing that Roller had relinquished claim to the $1,000. This is a misconception of the decree. And though such relinquishment was purely voluntary and gratuitous, and, in the view we have taken, unnecessary, it is nevertheless true that, as the decree is, he could have no advantage of it, except upon the condition of his making the relinquishment.

As to the objection that the court below erred in overruling Mrs. Meyer's exception to Commissioner Bird's report, on the ground that he had reported certain claims which had been excluded by the decree of April term, 1887, because not asserted by original bill or petition, we need only say that it has no foundation in fact.

It is also objected that the circuit court erred in overruling the exceptions of the appellants to the report of the sale made January 8th, 1888, to the appellee. These exceptions are five in number, and mostly frivolous. The first, that the sale-day was inclement and that there were only a few bidders, is answered by the affidavit of one of the commissioners of sale, who says the inclemency did not keep any bidders away; that the bidding was spirited, and that the sale was a good one, the price being $900 better than that at which it was sold to H. C. Allen in December, 1883. One bidder also deposed that his last bid was $4,500, which was $400 more than he was willing to give for the property several years before. There was no exception that the property did not bring an adequate price.

In answer to the exception that the decree left it uncertain whether appellants were to have credit for the Harrison note, it is only necessary to say that they were to have credit by it, if it had been paid, and it being their own debt, they of course should have best known whether or not it had been paid. And as to the question of the right of election whether the person-

alty or realty should be first sold, it is without merit, for the counsel of the appellants elected to have the sale made as it was made. Having gone carefully over the case as presented by the record, and considered every ground of objection taken by the appellants, with every disposition to temper the sternness of the law as applicable to them, we can but repeat that we find no error in the decree complained of. It must therefore be affirmed.

DECREE AFFIRMED.