WILLIAM V. JOHNSON *et al.*, Plaintiffs-Appellants, *v.* SEARS ROEBUCK & CO. *et al.*, Defendants-Appellees.

JOSEPH O. UDONI *et al.*, Plaintiffs-Appellants, *v.* MONTGOMERY WARD & Co. *et al.*, Defendants-Appellees.

FRANCIS J. O'BRYNE *et al.*, Plaintiffs-Appellants, *v.* WIEBOLDT STORES, INC. *et al.*, Defendants-Appellees.

(No. 56639;

First District (5th Division)—September 28, 1973.

William V. Johnson and Frank Glazer, both of Chicago, for appellants.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago, (Burton Y. Weitzenfeld and Peter D. Kaskin, of counsel,) for appellee Sears Roebuck & Co.

Hopkins, Sutter, Owen, Mulroy & Davis, of Chicago, (Thomas R. Mulroy, John L. Conlon, and Richard Bromley, of counsel,) for appellee Montgomery Ward.

Isham, Lincoln & Beale, of Chicago, (William W. Darrow, David J. Rosso, Donald S. Hilliker and Michael A. Pope, of counsel,) for appellee Wieboldt Stores.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This matter involves a consolidation of three class actions in which the plaintiffs, retail purchasers, challenged the revolving charge account arrangements of the defendants, retail sellers. Specifically, in identical amended complaints, plaintiffs asked (1) that defendants be enjoined from using the "previous balance" method of computing interest or finance charges, and (2) that they and each member of the class they purported to represent receive a refund of finance charges.

Motions to dismiss the amended complaints were sustained, and on appeal plaintiffs contend (1) that the Illinois Retail Installment Sales Act (Ill. Rev. Stat. 1971, ch. 121½, pars. 501—533) does not permit the use of the previous balance method of computing finance charges, (2) that sections 4.1, 4.2 and 4.3 of the Illinois Interest Act (Ill. Rev. Stat. 1971, ch. 74, pars. 4.1, 4.2 and 4.3) govern the revolving charge accounts of defendants, and (3) that the previous balance method is an unconscionable agreement in violation of section 2—302 of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 2—302).

There is no factual dispute. Each of the defendants uses the previous-balance method in computing its finance charges. Under this arrangement the defendants determine a billing period (one month) and mail their purchasers a statement showing the balance owed at the end of the first billing period, which we will refer to as the first-cycle balance. It reflects all debits and credits to the purchaser's account during the first month. Finance charges are not included in the first-cycle balance to allow the purchaser to pay that balance in full at any time prior to the end of the second cycle, in which event no finance charges are assessed on the first-cycle balance. However, if the first-cycle balance is not offset in full by payments and/or credits during the second cycle, a charge of 1½% on the full amount of the first-cycle or previous balance is included in the second-cycle balance sent to the customer. Similarly, for ensuing cycles the finance charge is based upon the unpaid balance at the end of the previous cycle.

The operation of the previous-balance method may be more readily understood from the following illustrations which assume that the rate of computation is 1½% per month and that the customer's first billing cycle ended on April 20.

(A) Assuming a single purchase of $100 on April 5 with no payments made or credits given during the first cycle, no finance charge is assessed on April 20 and the customer is informed that if the entire amount is paid before the end of the second cycle (May 20) no finance charges will then be assessed for the first cycle.

(B) Under (A) above there would be a balance on April 20 of $100 (previous balance for second cycle). Assuming a credit of $20 on April 25 for the return of goods purchased in the first cycle, a purchase of $20 on April 21 and a payment of $40 on May 15, inasmuch as the $100 first cycle or previous balance was not paid in full, the May 20 bill would include a finance charge of $1.50 (1½% of the previous balance (April 20) of $100).

(C) Under (B) above the second cycle balance would be $61.50 (previous balance for the third cycle) and assuming $61.50 was paid on June 2 and on June 4 another $100 purchase was made, there would be no finance charge at the end of the third cycle on June 20 because the $61.50 second cycle balance had been paid in full. There would, however, be a third cycle previous balance of $100.

It can be seen that under the previous-balance method a finance charge is made on the first-cycle balance at the end of the subsequent

cycle which does not take into consideration the payments made or credits given during that cycle unless they are in full payment of the previous balance. The plaintiffs argue that the charges, therefore, being on the previous balance are greater than they would be on the actual unpaid balance at the time they are assessed, and they maintain that this practice is in violation of the provisions of the Illinois Retail Installment Sales Act and the Illinois Interest Act. They urge that the "unpaid balance" method is the legally permissible method which should be used by defendants. Under it the finance charges would be made on an unpaid balance struck after deducting all payments and credits (but not including current purchases) up to the billing date of the cycle just closed. Under this method in (B) above, the finance charge made on April 20 would have been assessed on $40 instead of $100 under the previous balance method.

OPINION

## I

Plaintiffs initially contend that section 528 [1] of the Retail Installment Sales Act provides for the use of the unpaid-balance method of computation of finance charges and does not permit the use of the previous-balance method. They present four arguments in support of this position.

First, they assert that the term "previous balance" does not appear any place in section 528 and that the unpaid-balance method is mandated because of the following wording of that section:

> "[M]ay * * * charge * * * a finance charge not exceeding 18¢ per $10 per month, computed on all amounts *unpaid* thereunder from month to month, * * *. The finance charge under this Section may be computed for all *unpaid balances* from month to month within a range of not exceeding $10 on the basis of the median amount within the range if, as so computed, the same rate of finance charge is applied to all *unpaid balances* within the range." (Emphasis added.)

The significant portion of this section provides that finance charges are to be computed on "all amounts unpaid thereunder from month to month." Plaintiffs argue that the previous-balance method does not compute charges on "all amounts unpaid" because payments and credits in the second cycle in less than the full amount of the first cycle or previous balance are not considered and, as a result, the finance charges

---

[1] "There are 33 sections in the Retail Installment Sales Act and the parties, in their briefs, have identified them by their corresponding numbers in Ill. Rev. Stat. 1971, ch. 121½, secs. 501-533, and we will adopt these identifications, thus sec. 28 becomes sec. 528."

assessed at the end of the second cycle are not on the unpaid balance at that time. Defendants maintain that the previous-balance method is computed on an unpaid balance from month to month because the balance is struck at the end of the first cycle which is a correct "unpaid balance" at that time but no charge is made then so that the customer may avoid any charge by payment in full during the next cycle. Defendants also say that the unpaid-balance method urged by plaintiffs would violate section 528 because when the balance is struck, at the end of the second cycle, it does not include purchases made during that cycle and, therefore, would not be a correct "unpaid balance."

■■ We believe that the previous-balance method does compute finance charges on an unpaid balance each month. It appears to us that under this method an unpaid balance is determined at the end of each billing cycle which is the previous balance for the next cycle. Defendants could make a finance charge at the end of the first cycle under an appropriate calculation but, apparently for business reasons rather than on account of legal requirements, they prefer not to make any charge at that time. This election not to do so, we believe, constitutes a waiver of the finance charge for the first cycle conditioned upon payment in full during the second cycle. We conclude that the previous-balance method used by defendants here does compute finance charges on "all amounts unpaid thereunder from month to month" within the provisions of section 528 and it is not significant that the words "previous balance" do not appear in that section.

Plaintiffs, in their second argument, suggest that section 528 of the Retail Installment Sales Act should be read with section 502.7, which provides:

> " 'Retail Charge Agreement' * * * means an instrument prescribing the terms of a retail installment transaction * * * under the terms of which the finance charge is to be computed in relation to the buyer's unpaid balance from time to time."

They assert, when taken together, these sections reveal a legislative intent that finance charges should be computed on the unpaid balance and not on the previous balance. We disagree. The only restriction we find in reading these sections is that the finance charge must be computed on an unpaid balance which is struck in each billing cycle. In *Siebert v. Sears Roebuck & Co.*, 4 CCH, Consumer Credit Rptr., par. 99164 (No. 407558, Super. Ct. Cal., Alameda Co., (May, 1972)), balance was defined as the sum total of the debits and credits in the account at the time the balance is struck. We note also that section 525 of the Retail Installment Sales Act provides in part as follows:

> "(b) The seller * * * must promptly supply the buyer under

the agreement, as of the end of each monthly period (which need not be a calendar month) or other regular period agreed upon by the seller and the buyer in which there is any unpaid balance under that agreement a statement reciting the following terms * * *;

(1) the unpaid balance under the retail charge agreement at the beginning and end of the period;

(2) unless otherwise furnished by the seller to the buyer by sales slip, memorandum, or otherwise, an identification of the goods or services purchased during the period, the cash price and the date of each purchase;

(3) the payments made by the buyer to the seller and any other credits to the buyer during the period;

(4) the amount of any finance charge expressed as an annual percentage rate."

Under this provision the seller must supply the buyer with a statement reciting the unpaid balance at the beginning and at the end of each billing period. The previous-balance method reflects all debits and credits during each billing period, and we believe it satisfies the legislative intent of sections 502.7, 525 and 528.

In their third argument plaintiffs point to court decisions of other jurisdictions which they contend are in support of their position that the previous-balance method of assessing finance charges is not permitted. They cite *Montgomery Ward & Co. v. O'Neil*, 4 CCH Consumer Credit Rptr., par. 99,535 (Nos. 373,670 and 373,678, Minn. Dist. Ct. 2d Jud. Dist. (April, 1971)), wherein Ward's revolving credit card program, using the previous-balance method, was held to be usurious in violation of Minnesota's usury statute. We note, however, that there was no Retail Installment Sales Act in effect in Minnesota when that suit was commenced and the legality of Ward's method of computing finance charges was decided pursuant to the State's usury statute. Subsequently, while an appeal was pending, a statute was enacted which specifically declared revolving charge accounts, including those using the previous-balance method, as they existed in the State prior to the passage of the statute, to be legal and enforceable. Thereafter, the Minnesota Supreme Court remanded the matter to the trial court, which held that the new legislation was retroactive and legalized Ward's credit plan.

Plaintiffs also cite the New York case of *Zachary v. R. H. Macy & Co.*, 31 N.Y.2d 443, 293 N.E.2d 80, which has been the subject of considerable comment in the briefs of all parties. Defendants initially relied heavily on the trial court ruling which sustained the use of the previous-balance method under a New York statute which provided that finance charges

be "computed on the outstanding indebtedness from month to month." Subsequent to the filing of the initial briefs here, the New York Supreme Court, Appellate Division, reversed the trial court, and in their reply brief plaintiffs placed great import upon its holding that the previous-balance method was not permitted under the New York statute. All parties here agree that the New York statute was substantially similar to section 528 of our Retail Installment Sales Act. Interestingly, after all the briefs were filed here, the New York Court of Appeals, the highest court of that State, reversed the Appellate Division in *Zachary v. R. H. Macy & Co.* (1972), 31 N.Y.2d 443, 293 N.E.2d 80, stating at page 455:

> "Undoubtedly, the term 'outstanding indebtedness', in its ordinary sense denotes only the amount 'owing or unpaid' [citations]. But the term can only be measured by reference to some particular point in time, which may well be the amount outstanding at the beginning of a cycle (under the previous balance), at the close of a cycle (under the closing balance) or on an average daily basis during the cycle (under the average daily balance). Taken alone, there is nothing in the terms which would further connote that the time for computation of charges be fixed at one rather than another point in time."

And at page 461:

> "Under the circumstances, 'outstanding indebtedness from month to month' merely requires that finance charges be computed at consistent monthly intervals on the customer's outstanding indebtedness at that time. Since the previous balance provides for the consistent computation of finance charges on the customer's outstanding indebtedness on the last day of the prior billing period—carried forward as the outstanding indebtedness at the beginning of the current period—it complies with [the applicable section]."

We also note that in 1973, in the case of *Federated Dept. Stores, Inc. v. Pasco,* 275 So.2d 46, the Florida District Court of Appeals in interpreting a section of the Retail Installment Sales Act of that State which contained operative language substantially similar to that of section 528 of the Illinois Act, held the previous-balance method complied with the requirements of the Florida statute. At page 51 that court stated:

> "The Florida legislature framed the permissible finance charge in terms of a nominal rate and directed that the rate should be applied to the 'unpaid balance' in the customer's account on a particular day each month. The 'previous balance' method which represents the unpaid balance in the customer's account on the opening day of the billing (which is the day the finance charge

starts) does not represent a violation of the express terms of the statute.

The determinative words seem to be 'computed on all amounts unpaid thereunder from month to month (which need not be a calendar month) or the regular period * * *'. We find no reason to hold that the words in the above quotation 'all amounts unpaid thereunder from month to month' compel the use of the balance at the end of the period rather than the amount at the beginning of the period. The 'unpaid balance' in the customer's account at the beginning of the cycle, the 'unpaid balance' at the close of the cycle, or the average 'unpaid balance' are all encompassed by the statute."

In view thereof we reject plaintiffs' argument that the court decisions support their view that the previous-balance method violates the terms of section 528 of the Illinois Retail Installment Sales Act.

In their fourth argument in support of their contention that section 528 does not permit use of the previous-balance method, plaintiffs refer to section 4.2 of the Illinois Interest Act, which reads as follows:

"[A]n amount not in excess of 1½% of either the average daily *unpaid balance* * * * or of the *unpaid balance* of the debt on approximately the same day of the billing cycle. The face amount of the drafts, items, * * * received by the lender in connection with the revolving credit, less the amounts applicable to principal from time to time paid thereon by the debtor, are the unpaid balance of the debt upon which the interest is to be computed." (Emphasis added.)

■■ They point out that the act adding section 4.2 to the Interest Act was passed a few days before the Retail Installment Sales Act and because section 4.2 uses the term "unpaid balance" they argue the two acts, viewed together, show a legislative intent that finance charges be limited to the unpaid balance as defined in section 4.2, which would not include the previous balance. We have already expressed our belief that the previous-balance method assesses a charge on an unpaid balance at the end of a billing cycle and we do not believe that the language of section 4.2 of the Interest Act, singly or considered with the Retail Installment Sales Act, is indicative of a legislative intent to exclude the use of the previous balance.

Another contention raised in the briefs by plaintiffs is concerned with the fact that section 528 of the Retail Installment Sales Act limits charges that may be collected on amounts unpaid from month to month to a maximum of 18¢ per $10 on credi card accounts. Plaintiffs contend that the statute also provides that the annual finance yield should not exceed

the annual percentage rate, which must be disclosed to within the nearest one-quarter of 1%. This appears in section 502.15, which provides:

> "'Annual percentage rate' means the nominal annual percentage rate of finance charge determined in accordance with the actuarial method of computation with an accuracy at least to the nearest ¼ of 1%; * * *."

Defendants argue that section 502.15 must be read with section 525(b)(4), which provides:

> "The seller under a holder of a retail charge agreement must promptly supply the buyer under the agreement, * * * a statement reciting * * * the amount of any finance charge expressed as an annual percentage rate."

Taken together, defendants say, their provisions call for an annual percentage rate which is a nominal rate, and they contend they have complied therewith by disclosing to the buyer a finance charge of 18% per annum (1.5% × 12 months,) which, they point out, is less than the 21.6% rate allowed by section 528 (1.8 × 12 months). Plaintiffs argue that this disclosure by defendants does not comply with the statute, which plaintiffs contend requires a disclosure of the actual finance yield computed actuarially. Both sides agree that with the use of the previous-balance method the actual finance yield cannot be pre-determined actuarially because the customer is free to charge additional purchases to his account whenever he wishes and may make payments of different amounts at different times which would affect the total amount of his finance charge. Plaintiffs argue the statute requires actuarial computation and the fact that it cannot be done is a further reason in support of their position that the previous-balance method is not permitted under the Retail Installment Sales Act.

Defendants in turn contend that section 502.15 defines "annual percentage rate" as a "nominal" rate, and they maintain that if the legislature required an actual finance yield to be disclosed the word "nominal" would not have been used. We note that Regulation Z,[2] issued pursuant to the provisions of the Federal Truth in Lending Act,[3] contains requirements for the determination of annual percentage rate. Section 226.5(b) of Regulation Z provides that the actuarial method is to be used to determine annual percentage rate in any extension of credit "other than open end credit." Section 226.5(a) of Regulation Z provides that in open-end credit situations (which include revolving charge acounts) the an-

---

[2] 12 C.F.R. § 226.

[3] 15 U.S.C. § 1601-1665.

nual percentage rate is required to be determined by multiplying the monthly rate by 12. This is the manner in which defendants here have determined and disclosed the annual percentage rate.

We note that the 9th Circuit Court of Appeals in *Taylor v. R. H. Macy & Co.*, No. 72-2119, June Term, 1973, concerning the permissibility of the previous-balance method under the Federal Truth in Lending Act, stated:

> "[I]t seems abundantly clear that both the Act and the Regulation envisage and approve the previous balance method * * *. Our construction is reinforced by the fact that both the Federal Trade Commission and the Federal Reserve Board have interpreted the statute and regulation as authorizing the previous balance method."

The court went on to hold that under the previous-balance method the nominal annual percentage rate was correctly disclosed as being 18%, the same rate disclosed here by defendants.

■■ Section 111A of the Federal Truth in Lending Act provides for the necessity of compliance with State laws requiring disclosure of information concerning credit transactions except where the State law is inconsistent. Section 226.6(b) of Regulation Z declares a State law to be inconsistent with the Federal act when it requires disclosure of an annual percentage rate of finance charge which is determined in a manner "other than that prescribed in section 226.5." Section 502.15 of the Illinois act requires a determination of annual percentage rate in accordance with the actuarial method of computation, which we believe is inconsistent with section 226.5 of Regulation Z and, under these circumstances, we are of the opinion that the Federal act requires retailers, including defendants here, to follow the Federal standards of disclosure. It appears that defendants here have determined and disclosed an annual percentage rate in accordance with the Federal requirements, and thus have met necessary legal requirements in this regard.

We are aware that situations have arisen and will arise where the annual finance yield may be significantly higher than the "18¢ per $10 per month" stated in the statute. However, we are also cognizant that finance charges are assessed for the privilege of purchasing goods to be paid in future installments and their purpose is to reimburse the seller for his investment and operating cost in connection with the revolving credit arrangements. We believe that the deferral feature of the previous-balance method affords the customer an option to pay in full at any time during the subsequent cycle and thereby avoid the payment of any finance charge on the previous balance. This provides the possibility of avoiding finance charges for periods as high as 59 days (*i.e.*, a $100

purchase on April 1 which was repaid in full on May 29), and the opportunity, at least, of counterbalancing those situations where the yield might be higher than 18% per year. But, as we have pointed out about, the statutory finance-charge rate is not applicable to the seller's yield.

It is not our function to determine whether the method advocated by plaintiffs might not possibly be more equitable to credit purchasers, but only to decide whether the previous-balance method is legally permissible under the Illinois statute. In the light of the foregoing, we conclude that the Illinois Retail Installment Sales Act does permit the use of the previous-balance method used by defendants to compute finance charges on revolving charge accounts.

## II

Plaintiffs' second contention is that the trial court erred in ruling that as a matter of law the revolving charge accounts of each defendant are not governed by the Illinois Interest Act.

Section 4.1 of the Act defines revolving credit as follows:

> "The term 'revolving credit' means an arrangement, including by means of *a credit card as defined in Section 17—1 of the Criminal Code of 1961*, between a lender and debtor pursuant to which it is contemplated or provided that the lender may from time to time make loans or advances to or for the account of the debtor through the means of drafts, items, orders for the payment of money, evidences of debt or similar written instruments, whether or not negotiable, signed by the debtor or by any person authorized or permitted so to do on behalf of the debtor, which loans or advances are charged to an account in respect of which account the lender is to render bills or statements to the referred to as the 'billing cycle') * * *." (Emphasis added.)

■■ Plaintiffs argue that the reference in section 4.1 to "a credit card as defined in section 17—1 [4] of the Criminal Code" includes sales of merchandise on credit. We disagree with this reasoning. It is our conclusion that section 4.1 does not include all types of credit cards, and we believe its application is limited to those credit cards which may be used to make loans or advances in lender-debtor transactions, whereas defendants' revolving charge accounts are used solely for credit purchases. Neither can we accept plaintiffs' argument that sales on credit are within the Interest Act on the theory they are included in the reference to "items" in section 4.1.

---

[4] Ill. Rev. Stat. 1971, ch. 38, par. 17—1: "A credit card means any card, plate, coupon book, or other credit device, * * * issued for the purpose of obtaining property, labor or services in credit or in deferred installments."

We note that the Uniform Commercial Code as enacted in Illinois defines "item" as:

"[A]ny instrument for the payment of money even though it is not negotiable but does not include money; * * *." (Ill. Rev. Stat. 1971, ch. 26, par. 4—104(g).)

And, the official comment to this section states:

"The word 'item' is chosen because it is 'banking language' and includes non-negotiable as well as negotiable paper calling for money and also similar paper governed by the Article on Investment Securities (Article 8) as well as that governed by the Article on Commercial Paper (Article 3)."

We believe the term "items" is intended to indicate a type of instrument calling for the payment of money in the same manner that "drafts" and "orders for the payment of money" are used in section 4.1 and that it has no reference to credit sales.

Plaintiffs also maintain that the term "billing cycle" in section 4.1 contemplates billings for the purchase of goods. We find no basis for such an interpretation, and we believe the use of the term "billing cycle" as it is used in section 4.1 refers to the regular time period extended to a debtor by a lender concerning a loan or advance.

Plaintiffs then argue that a revolving charge account, in substance, is a loan of money and therefore subject to the provisions of the Interest Act. In taking this position plaintiffs, in effect, are contending that the charges under the previous-balance methods are usurious under that Act. They point out that this question has not been considered by an Illinois reviewing court, and they rely principally on three cases from other jurisdictions in support of their position. In *State of Wisconsin v. J. C. Penney Co.,* 48 Wis.2d 125, 179 N.W.2d 641, it was held that Penney's practice of charging a 1½% monthly charge on the declining unpaid balance of revolving charge accounts constituted a forbearance to collect a debt and was usurious within the meaning of the Wisconsin statute. This case is distinguishable in that Illinois had no such forbearance provision in its statute. Furthermore, in *Penney* the parties had agreed the revolving credit arrangements were not loans, as the court stated at page 133, "Both parties seem to agree it is not an actual loan, and the trial court specifically found 'There is no loan as such.'" In *Lloyd v. Gutgsell,* 175 Neb. 775, 124 N.W.2d 198, it was held that when a time sale price is determined by applying a schedule of rates or charges to the cash price the resulting product is interest received for the forbearance to collect the cash price and the law of usury applies as though it was interest on a loan. Although this case supports plaintiffs' position that the revolving charge account is essentially a loan, we note that the

Nebraska legislature by statute,[5] effective subsequent to the *Lloyd* decision, has taken revolving charge accounts out of the scope of its usury statute. In *Sloan v. Sears, Roebuck and Co.,* 228 Ark. 464, 308 S.W.2d 802 it was held that in an installment sale where a sum of money is added to the purchase price as a "carrying charge", the carrying charge, in reality, was interest and, being greater than 10% per annum, was usurious. That case, however, is also distinguishable because the decision was mandated by the particular language of the Arkansas Constitution of 1894, art. 19, sec. 13 (not found in our constitution or statute), which provided:

> "All contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and interest, and the General Assembly shall prohibit the same by law;   *   *   *."

We are not persuaded by the cases cited by plaintiffs and, although the finance charges of the defendants bear some resemblance to a loan of money, we believe there is a well-established distinction in this State between finance charges in the purchase of property, goods or services and interest charges for the use of money. In *Primley v. Shirk,* 60 Ill.App. 312, 314, *aff'd,* 163 Ill. 389, the court held:

> "On a sale of property the parties may make such a bargain as they agree upon, and there can be no usury charged simply because the price is fixed at one sum if paid at one time, and at another sum if paid at another."

The court in *Manufacturers Finance Trust v. Stone,* 251 Ill.App. 414, reaffirmed this by stating at p. 419:

> "Usury is defined to be an illegal profit required and received by a lender of a sum of money from a borrower."

And at p. 421:

> "[A]ppellee was a bona fide purchaser of property, not a borrower of money, and hence, not within the purview and protection of the usury laws."

In *Contract Buyers League v. F & F Investment,* 300 F. Supp. 210 (N.D. Ill. 1969), *aff'd sub nom. Baker v. F & F Investment,* 420 F.2d 1191 (7th Cir. 1970), *cert. denied,* 400 U.S. 821, the court stated at page 228:

> "It has always been the understanding of the courts that the Illinois usury statute relates to loans as distinct from purchase and sale."

Particularly significant is a recent decision of this court in the consoli-

---

[5] Nebraska Reissue Revised Statutes, 1943, § 45—207 (effective May 24, 1965).

dated class actions of *Rose v. Sears Roebuck & Co.*, 12 Ill.App.3d 929, 299 N.E.2d 95, and *Manson v. Montgomery Ward & Co.*, 12 Ill.App.3d 929 299 N.E.2d 95. There, plaintiffs contested the right of defendants to impose a finance charge on that part of an unpaid credit balance which consisted of sales taxes. In rejecting plaintiffs' claims this court found that the charges were permitted under the Retail Installment Sales Act and it stated, *inter alia*, that "plaintiffs' attempt to brand the finance charge here as usurious interest is irrelevant since we are dealing with finance charges, which are not subject to the general interest provisions."

Thus, Illinois recognizes that a seller may sell his property for the immediate payment of a certain amount ("cash price") or permit payment over a period of time for a greater total price ("time price"). Such a transaction is not a loan, and the additional amount charged, the time price differential, is not subject to the usury laws.

The Illinois Retail Installment Sales Act (Ill. Rev. Stat. 1967, ch. 121½, par. 528) used the term "time price differential" until 1969 when the Act was amended and "finance charge" was substituted to conform its terminology to that of the Federal Truth in Lending Act, 1969, 15 U.S.C., §§ 1601-1665. Section 502.11 of the Illinois act, as originally enacted in 1967, provided:

> " 'Time price differential' means the amount, however denominated or expressed, which a retail buyer contracts to pay or pays for the privilege or [*sic*] purchasing goods or services in installments, exclusive of any amounts charged for insurance, official fees, delinquency charges, attorney's fees, court costs, or collector expenses."

The present section 502.1 reads, in pertinent part, as follows:

> " 'Finance charge' means the sum of all charges payable, directly or indirectly by the buyer and imposed directly or indirectly by the seller as an incident to or as a condition of the extension of credit, whether payable by the buyer, the seller, or any other person on behalf of the buyer to the seller or a third party including any of the following types of charges:
> (1) Interest, time price differential,   *   *   *."

In view thereof, we believe the Illinois legislature recognizes the time-price doctrine as a concept subject to regulation by the Retail Installment Sales Act rather than the Interest Act.

It appears that the weight of authority in other jurisdictions supports the defendants' position that the sale of merchandise, either real or personal property, is not usurious when the sale is made for one price if

cash is paid and for a higher price if payment is deferred or if payment is made in future installments. *Hogg v. Ruffner,* 66 U.S. (1 Black) 115, 17 L.Ed 38.[6]

As announced in *Hogg,* the time-price doctrine provides a ready exemption for installment and revolving credit sales under State usury legislation, which is invariably limited to interest transactions defined as charges for the loan or forbearance of money. See also *Zachary v. R. H. Macy & Co.* (1972), 31 N.Y.2d 443, 293 N.E.2d 80, cited above.

In addition, text authority supports the theory that a *bona fide* credit sale is not usurious when a higher price is charged and paid for a credit sale than for a cash sale. 14 Williston, *Contracts,* sec. 1685 (3d ed. 1972); 6A Corbin, *Contracts,* sec. 1500 (1962).

■■ Accordingly, we believe revolving charge accounts are not loans of money and that the finance charges assessed by defendants are time-price differentials, not interest, and therefore not usurious.

In this regard it is interesting to note that in the related class action of *Brown v. Marcor, Inc.,* (Ill.App.3d) (1st Dist., No. 56798), (N.E.2d), argued orally at the same time as the instant case, plaintiffs are challenging the use of the same previous-balance method of computing finance charges (Montgomery Ward & Co. is a defendant there also). The plaintiffs in that case take the position that the method is in violation of the Retail Installment Sales Act, but is not usurious under the Illinois Interest Act.

Finally, plaintiffs here maintain that the Retail Installment Sales Act

---

[6] *United Acceptance Corp. of Florida v. Joiner,* 280 Ala. 605, 196 So.2d 720; *Howell v. Mid-State Homes, Inc.,* 13 Ariz.App. 371, 476 P.2d 892; *Zazzaro v. Colonial Acceptance Corp.,* 117 Conn. 251, 167 A. 734; *Kass v. Garfinckel, Brooks Bros., Miller & R., Inc.* (D.C. Cir.) 299 A.2d 542; *Petersen v. Philco Finance Corp.,* 91 Idaho 644, 428 P.2d 961; *Wilson v. J. E. French Co.,* 214 Cal. 188, 4 P.2d 537; *Theodore Roosevelt Agency, Inc. v. General Motors Acceptance Corp.,* 156 Colo. 237, 398 P.2d 965; *Rushing v. Worsham,* 102 Ga. 825, 30 S.E. 541; *Davidson v. Davis,* 59 Fla. 476, 52 So. 139; *Atlas Securities Co. v. Copeland,* 124 Kan. 393, 260 P. 659; *Commercial Credit Equipment Corp. v. Larry Parrott of Gueydan, Inc.,* 212 So.2d 860, *writ refused,* 252 La. 895, 214 So.2d 719; *Financial Credit Corp. v. Williams,* 246 Md. 575, 229 A.2d 712; *Black v. Contract Purchase Corp.,* 327 Mich. 636, 42 N.W.2d 768; *Schauman v. Solmica Midwest, Inc.,* 283 Minn. 437, 168 N.W.2d 667; *Bryant v. Securities Investment Co.,* 233 Miss. 740, 102 So.2d 701; *General Motors Acceptance Corp. v. Weinrich,* 218 Mo.App. 68, 262 S.W. 425; *Carolina Industrial Bank v. Merrimon,* 260 N.C. 335, 132 S.E.2d 692; *Sliger v. R. H. Macy & Co., Inc.,* 59 N.J. 465, 283 A.2d 904; *Henry v. P & E Finance Co.,* 197 Okla. 676, 174 P.2d 373; *Brown v. Crandall,* 218 S.C. 124, 61 S.E.2d 761; *Dennis v. Sears, Roebuck & Co.,* 223 Tenn. 415, 446 S.W.2d 260; *Avant v. Gulf Coast Invest. Corp.,* 457 S.W.2d 134; *Lundstrom v. Radio Corp. of America,* 17 Utah 2d 114, 405 P.2d 339; *Myers v. Roller,* 85 Va. 621, 8 S.E. 483; *Hafer v. Spaeth,* 22 Wash.2d 378, 156 P.2d 408; *Uni-Serv. Corp. of Mass. v. Commissioner of Banks,* 349 Mass. 283, 207 N.E.2d 906.

applies to true installment or "time price" sales and does not permit the previous-balance method. Corollarily they contend that the Interest Act governs the use of revolving charge accounts whether they are bank cards or department store cards. They draw a distinction between the closed-end credit account under a retail installment contract and an open-end credit account under a revolving charge agreement, and they would limit the application of the Retail Installment Sales Act to closed-end credit and apply the Interest Act to open-end credit.

There are differences between these two types of retail credit. In the closed-end account, a contract is entered with a precomputed finance charge added at the time of purchase, and the purchaser makes equal monthly installments over a specified period of time. Under the open-end account there is a single written agreement between the retailer and the customer allowing for purchases on the account from time to time. Finance charges, instead of being precomputed, are assessed at monthly intervals on the unpaid balance.

Defendants contend that the Retail Installment Sales Act specifically contemplates and separately designates not only the closed-end type of credit referred to in the Act as retail installment credit, but also the open-end credit referred to in the Act as a retail charge agreement. They argue that plaintiffs' interpretation would render superfluous many of the provisions of the Act (Ill. Rev. Stat. 1971, ch. 121½, pars. 501—533). We agree with defendants' position and note that sections 502.6, 503, 504, 505, 506, 521 and 527 specifically relate to retail installment contracts, while sections 502.7, 525 and 528 pertain to revolving charge accounts. Our view is buttressed by the language in section 502.5 which provides:

> " 'Retail installment transaction' means a credit sale of goods or a furnishing or rendering of services by a retail seller to a retail buyer for a deferred payment price payable in one or more installments pursuant to a *retail installment contract* or a *retail charge agreement*." (Emphasis added.)

Accordingly, we conclude that the Retail Installment Sales Act is not limited in application to closed-end installment contracts.

### III

Plaintiffs' final contention is that the previous-balance method of imposing finance charges is unconscionable in violation of section 2—302 of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 2—302). This argument was not raised in the trial court and, under *Galt v. Illinois Commerce Com.,* 28 Ill.2d 501, 192 N.E.2d 906, it would not be properly before this court were it not for the fact that this court has the right to consider the issue *sua sponte* (S.H.A., ch. 26, § 2—302,

Official Comment, p. 173). Plaintiffs; under this theory, argue it is not fair to assess a finance charge, as they claim defendants do, under the previous-balance method (1) on an amount of money that has already been paid or (2) on money that is not even owed, as indicated by the following examples:

(1) Consumer has first cycle ending balance of $100 which is the beginning or previous balance of the second cycle. Early in the second cycle he makes a $90 payment, leaving a balance of $10 at the end of the second cycle. The finance charge at the end of the second cycle is assessed on the previous balance of $100.

(2) Consumer returns merchandise valued at $90 in the second cycle which was bought in the first cycle and still is assessed a finance charge on the previous balance of $100.

This position of plaintiffs centers on their contention that all payments and credits during the second cycle should have been considered when the balance was struck at the end of that cycle (unpaid-balance method). However, inasmuch as we have found that the previous-balance method is permitted by the Retail Installment Sales Act and that it was not usurious under the Interest Act, we reject the contention that it was unconscionably in violation of UCC § 2—302.

■■ For the reasons stated, we are of the opinion that the trial court was correct in dismissing the complaints as amended in each of these consolidated cases, and the judgment is affirmed.

Affirmed.

ENGLISH and LORENZ, JJ., concur.