ELIZABETH G. SMITH, Plaintiff-Appellant, *v.* SEARS, ROEBUCK AND CO., Defendant-Appellee.

Fourth District   No. 16450

Opinion filed April 7, 1981.

CRAVEN, J., dissenting.

George L. Chesley, of Bloomington (DePew, Grimes & Chesley, of counsel), for appellant.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago (Peter D. Kasdin and Richard C. Gering, of counsel), for appellee.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Plaintiff, individually and in behalf of others similarly situated, appeals from the order of the trial court which dismissed her amended complaint seeking damages. She elected to stand on her amended complaint and appeals the order.

Plaintiff contends that defendant's operation of its "Easy Payment Plan" violated the Retail Installment Sales Act (Ill. Rev. Stat. 1975, ch. 121½, par. 501 *et seq.*), the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1975, ch. 121½, par. 261 *et seq.*), and "An Act in relation to the rate of interest * * *" (hereinafter Interest Act) (Ill. Rev.

Stat. 1975, ch. 74, par. 1 *et seq.*). The action was commenced in November 1975, but defendant's use of the payment plan was discontinued in 1976, prior to the hearings on the pleadings.

There is substantial agreement as to the substance of the plan in effect. Defendant, as a retailer of consumer goods, granted to customers the privilege of paying for their purchases on an installment basis. A person who approved credit executed a retail installment sales contract which expressly provided for a series of credit sales under the plan, and Sears did not thereafter require completion of a separate contract for each separate sale.

As to a specific purchase, the customer chose either to pay cash or by installments. If the latter, the customer would pay a deferred payment price which included the cash price of the item plus a predetermined finance charge computed as to the cash price. The customer would indicate the number of months over which payment would be extended and a payment schedule determined for equal monthly installments until paid.

Any subsequent sale was added to and was consolidated with any unpaid balance on a single monthly billing so that the customer had but one balance and one monthly payment. While additional purchases might require a longer period to pay the consolidated balance, there was no refinancing as to earlier purchases or increase in the finance charge on such earlier purchase. Upon any prepayment of the balance, the customer received a rebate of a portion of the finance charge.

The customer entering such plan executed a retail installment contract before the initial purchase. A disclosure statement was issued to the customer at the time of such final credit purchase and again before any later purchase when the account had a zero balance. Finally, a monthly billing statement was delivered to the customer every month before the installment payment was due. As to each purchase, the customer received a sales slip which acknowledged election to make a credit purchase and was signed by the customer.

Count I alleges that plaintiff made a credit purchase and full payment under the plan, and that thereafter further credit purchases were made under the initial credit agreement with finance charges therefore. It is alleged that the subsequent purchases must be made through a separate installment contract for the reason that subsequent purchases may only be consolidated with prior purchases where the latter remain unpaid. Plaintiff charges that such system violates the Retail Installment Sales Act (Ill. Rev. Stat. 1975, ch. 121½, par. 501 *et seq.*) and is an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1975, ch. 121½, pars. 262E and 262F). In the alternative, she charges violation of the Interest Act (Ill. Rev. Stat. 1975, ch. 74, par. 1 *et seq.*). Plaintiff prayed damages and attorney's fees.

Count II of the amended complaint alleges that as to plaintiff's subsequent purchases, defendant failed to give disclosure as required in the several sections of the Retail Installment Sales Act. Recognizing that the opinion in *Hoover v. The May Department Stores Co.* (1979), 77 Ill. 2d 93, 395 N.E.2d 541, had determined that the Retail Installment Sales Act did not provide a private cause of action for damages, plaintiff prayed that the court award a penalty as provided in section 31(b) of the Act (Ill. Rev. Stat. 1975, ch. 121½, par. 531(b)).

Count III realleges the matters stated in count II, terms them "wilful and material violations" of the Retail Installment Sales Act, and prays damages as provided in sections 2E, 2F, and 10a of the Consumer Fraud Act (Ill. Rev. Stat. 1975, ch. 121½, 262E, 262F, and 270a).

In its written order dismissing the complaint, the trial court concluded that the opinion in *Hoover* did not permit a private action for damages under the Retail Installment Sales Act. The order also dismissed a count to a prior amended complaint which alleged violation of the Consumer Fraud Act upon the finding that there were no allegations of violation of sections 2A through 2N (Ill. Rev. Stat. 1975, ch. 121½, pars. 262A through 262N).

■■ Plaintiff contends that in the absence of a retail installment contract there is no agreement as to finance charges so that the Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 1 *et seq.*) applies and would limit the amount that defendant could recover. We are not persuaded by plaintiff's argument that there is no longer a legal distinction between interest and the finance charges for the sale of consumer goods on credit.

In *Johnson v. Sears Roebuck & Co.* (1973), 14 Ill. App. 3d 838, 303 N.E.2d 627, plaintiff contended that the Retail Installment Sales Act did not permit the computation of finance charges by use of a previous balance method, but that the Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 1 *et seq.*) controlled. The reviewing court stated, however:

> "Thus, Illinois recognizes that a seller may sell his property for the immediate payment of a certain amount ('cash price') or permit payment over a period of time for a greater total price ('time price'). Such a transaction is not a loan, and the additional amount charged, the time price differential, is not subject to the usury laws." 14 Ill. App. 3d 838, 851, 303 N.E.2d 627, 637.

Subsequently, the *Johnson* opinion stated:

> "Accordingly, we believe revolving charge accounts are not loans of money and that the finance charges assessed by defendants are time-price differentials, not interest, and therefore not usurious." 14 Ill. App. 3d 838, 852, 303 N.E.2d 627, 638.

At the date of the opinion in *Johnson*, section 2.11 of the Retail

Installment Sales Act (Ill. Rev. Stat. 1971, ch. 121½, par. 502.11) defined "finance charges" as including:

> "(1) Interest, time price differential, and any amount payable under a discount or other system of additional charges."

The same language is present in the current statute. The matters stated severally in the quoted portion of the Act differ in quality and substance, and cannot be construed as identical. The legislature has not amended the provision since the opinion in *Johnson.* We can find no basis for concluding that the legislature intended the Interest Act to control.

Plaintiff asserts that she is entitled to recover damages under the language of section 10a of the Consumer Fraud Act (Ill. Rev. Stat. 1975, ch. 121½, par. 270a) which provides that a person who has suffered damages "as a result of a violation of Sections 2 through 2N of this Act" may bring an action. Plaintiff argued in the trial court and here that the complaint suffices to allege violation of sections 2E and 2F of the latter Act (Ill. Rev. Stat. 1975, ch. 121½, pars. 262E, 262F).

Section 2E of the Act states:

> "Any person * * * who has committed in any calendar year 3 or more violations, *as determined in any civil or criminal proceeding,* of the * * * 'Retail Installment Sales Act' * * * is guilty of an unlawful practice within the meaning of this Act." (Emphasis added.)

Section 2F provides that it is unlawful practice for:

> "Any person who is *held in any civil or criminal proceeding* to have wilfully and materially violated any Illinois statutory provision * * * designed to protect the consumer purchasing merchandise in a credit, as contrasted from a cash, transaction * * *." (Emphasis added.)

Plaintiff argues that the allegation that defendant extended further credit without requiring plaintiff to execute a new retail installment sales contract when the balance on the initial contract was zero states a wilful and material violation of the Retail Installment Sales Act. No facts are pleaded to establish such aggravation, but there is simply an assertion of wilfulness and materiality.

■■ We conclude that the argument fails to consider the substance and structure of the Retail Installment Sales Act. Section 2E requires that there must be three or more violations of that Act within a calendar year as determined in a civil or criminal proceeding. Section 2F provides an action for damages against a person where he has been held to have wilfully and materially violated that Act in a civil or criminal proceedings.

■■ Under the determination in *Hoover,* the Retail Installment Sales Act provides that only the Attorney General or the State's Attorney may bring an action. We find no allegation of any action by either the Attorney

General or any State's Attorney in which a court has made the respective findings required under either of the sections alleged. This interpretation is compatible with the language of *Hoover,* where it is said:

> "No longer is there a statutory provision for the maintenance of a private action for a mere violation of the Retail Installment Sales Act. Such action can only be maintained when aggravated violations bring the conduct within the provisions of one of the other two consumer-protection statutes." 77 Ill. 2d 93, 102, 395 N.E.2d 541, 546.

Plaintiff claims that under count II the court should award a penalty under the provisions of section 31(b) of the Retail Installment Sales Act (Ill. Rev. Stat. 1975, ch. 121½, par. 531(b)). That provision states:

> "No person who violates this Act, * * * may recover any finance charge, * * * in connection with the related retail installment contract * * *."

It is apparent that such provision is designed to bar the creditor in an action to recover such charge, but does not purport to provide a method of awarding the so-called penalty to the purchaser. In count II, the plaintiff also requests a declaratory judgment under which the trial court would hold that the Sears plan violated the Retail Installment Sales Act. One must recall that in *Hoover,* the supreme court stated that the legislative action as to such act and its associated acts "compels the conclusion that the General Assembly did not intend that a private cause of action be maintained under the present Retail Installment Sales Act." (77 Ill. 2d 93, 104, 395 N.E.2d 541, 546.) No distinction has been made between an action for damages and other civil actions for injunction or declaratory judgment.

The judgment is affirmed.

Affirmed.

WEBBER, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

Sears' "Easy Payment Plan" violates the Retail Installment Sales Act (Ill. Rev. Stat. 1979, ch. 121½, par. 501 *et seq.*). Section 3(a) of the Retail Installment Sales Act requires that retail installment sales contracts be in writing, and completed in all essential details prior to being signed by the buyer. (Ill. Rev. Stat. 1979, ch. 121½, par. 503(a).) Section 21(a) provides in pertinent part:

> "(a) If, in a retail installment transaction, a retail buyer makes any subsequent purchase of goods or services from a retail seller from whom he has previously purchased goods or services under

one or more retail installment contracts, *and the amounts under the previous contract or contracts have not been fully paid,* the subsequent purchases may, at the seller's option, be included in and consolidated with one or more of the previous contracts." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 121½, par. 521(a).

The complaint alleged, and Sears essentially concedes, that it did not require persons who had paid in full the amount due under a retail installment sales contract with Sears to execute a new contract before participating in the "Easy Payment Plan" for subsequent purchases of goods. The foregoing provision allows consolidation of purchases, but only when the amount owed under the previous purchase had not been fully paid. A new written contract must, however, be executed in all cases where goods are purchased under a retail installment sales contract, even in cases where consolidation is permitted. Ill. Rev. Stat. 1979, ch. 121½, par. 521(a).

The Retail Installment Sales Act is a statutory exception to the Illinois Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 1 *et seq.*). For the transactions in which Sears failed to comply with the Retail Installment Sales Act, the interest rate which they may charge for goods sold on credit is governed by the Interest Act, which provides for a maximum interest rate on installment loans of 9% per year. (Ill. Rev. Stat. 1979, ch. 74, par. 4a.) The interest rate charged under the "Easy Payment Plan," 18% per year, is a violation of the Interest Act. The Interest Act, unlike the Retail Installment Sales Act, provides for a private cause of action, and therefore plaintiff's complaint was improperly dismissed. Ill. Rev. Stat. 1979, ch. 74, par. 6.

The majority avoids this issue by finding the Interest Act inapplicable based on the distinction between interest and "time-price differential." The difference between interest on money loaned and interest charged for goods purchased on credit is at best artificial. This court compounds the error of the court in *Johnson v. Sears Roebuck & Co.* (1973), 14 Ill. App. 3d 838, 303 N.E.2d 627, by following this artificial and erroneous distinction. The hard fact is the transactions here involved were not excepted from the Interest Act by reason of the Retail Installment Sales Act exception. The Interest Act applies. For us not to so hold thwarts the legislative purpose and creates artificial and intellectually indefensible distinctions.