Scileppi, J.
In five consolidated actions, each asserting individual and representative causes of action for injunctive and declaratory relief as well as an accounting and recovery of damages pursuant to section 414 (subd. 2) of the Personal Property Law, plaintiffs, who maintain charge accounts with various department stores on a revolving-credit or open-end basis, complain that defendants’ method of computing finance charges on their accounts violates section 413 of the Personal Property *448 Law, authorizing finance charges on “ outstanding indebtedness ” only (Personal Property Law, § 413, subd. 3)[1]. Special Term, New York County (Asch, J.), in an opinion, granted summary judgment dismissing the individual and representative causes of action (66 Misc 2d 974). The Appellate Division, two Justices dissenting, reversed, also in an opinion (39 A D 2d 116), granted plaintiffs’ cross motions for summary judgmént on the representative causes of action, but only to the extent that they sought declaratory and injunctive relief, severed and remanded the individual causes of action for damages and dismissed the representative causes of action for an accounting and recovery of statutory damages (39 A D 2d 116, 121-122). This appeal and cross appeal from those portions of the Appellate Division order declaring the “ previous balance ” method unlawful and holding the representative actions properly maintainable for that relief only, and that portion which dismissed the complaints to the extent that they sought an accounting and damage* respectively, followed.
We are met preliminarily with the question whether plaintiffs’ cross appeal, prosecuted purportedly as of right, is properly before us. The courts below have agreed that the representative actions should be dismissed insofar as they request an accounting and statutory damages. To the extent, however, that these actions further make claim to declaratory and injunctive relief, the Appellate Division has taken a different view from that of Special Term, and, relying on this court’s decision in Kovarsky v. Brooklyn Union Gas Co. (279 N. Y. 304), has ■granted relief on a class basis. In its over-all effects, therefore, though denominated a reversal, the order is essentially a modification, and as such, appealable as of right only if it is substantial and aggrieves the party taking the appeal (CPLR 5601, subd. [a], par. [iii]; see, also, Barber & Bennett v. State of New York, 27 N Y 2d 738; Matter of Daye v. McCoy, 31 N Y 2d 770; Zimmerman, Supp. Prac. Comment. to CPLR 5601, McKinney’s Cons. Laws of N. Y., Book 7B [1972 Cum. Supp., pp. 278-279]). Defendants undoubtedly satisfy both criteria: they have been *449 substantially aggrieved by the granting of class relief, even to the limited extent indicated, and, further, by the Appellate Division’s disposition on the merits.[2] On the other hand, it is clear that plaintiffs have not been aggrieved since the modification granting class relief on a limited basis has not worked to their detriment but has simply fallen short of all the relief sought by the appeal to the Appellate Division. Under the circumstances, their cross appeal should be dismissed (Barber & Bennett v. State of New York, 27 N Y 2d 738, supra; Lalomia v. Bankers & Shippers Ins. Co., 27 N Y 2d 796; cf. Levine v. Shell Oil Co., 27 N Y 2d 797; CPLR 5601, subd. [a], par. [iii]).
One thing more: In holding, for reasons to be presently explained, that defendants’ method of computing finance charges comports with section 413 of the Personal Property Law, we treat with the issues on the basis of the individual claims for relief set forth in the Various complaints. The further question of whether such actions for declaratory and injunctive relief are maintainable on a class basis is left for another day, and, more importantly, a proper case. We think it significant to note, nonetheless, that this much mooted subject is again before the Legislature on the basis of recent Judicial Conference recommendations designed to broaden its scope (see 10th Report of Judicial Conference to Legislature on CPLR, pp. 16-19, with proposed statutory text).
The material facts are simple enough. Each of the named defendants is a corporation authorized to do business and presently doing business in New York. They include most of the large and among the most established department stores in New York, selling merchandise and services at retail to consumers. As part of its ordinary business dealings, perhaps sales promotion, each offers its customers revolving charge *450 accounts,[3] pursuant to certain credit agreements, “ retail instalment credit agreements ” (Personal Property Law, § 413), under which the consumer may elect to make retail purchases of wares and various services on credit. Billing is done later, as of a regular billing date. Payments may be made in full at any time, or the customer may, instead, elect to pay the amounts owed for credit purchases in minimum monthly installments for which, of course, the consumer further agrees to pay certain finance charges.
When a purchase is made under the revolving-credit agreement, an obligation is created and the amount owed is reflected as an immediate debit to the customer’s account. At the close of each billing period, the customer is sent a statement reflecting account activity, including all purchases, payments and credits, through the end of that billing period. The difference between total debits and total credits constitutes the account’s outstanding indebtedness.
Concededly, finance charges, if any, for credit extended are computed monthly on the basis of the account’s “ previous balance ” or the outstanding balance at the beginning, rather than the close, of the current monthly billing cycle, and at nominally, authorized rates. It is the practice which plaintiffs challenge.
Subdivision 3 of section 413 of the Personal Property Law, authorizing finance charges by retail sellers on open-end credit accounts, insofar as pertinent, provides:
“ 3. A seller may, in a retail instalment credit agreement, contract for and, if so contracted for, the seller or holder thereof may charge, receive and collect the service charge authorized by this article. The service charge shall not exceed the following rates computed, for the purposes of this, section, on the outstanding indebtedness from month to month:
“ (a) On so much of the outstanding indebtedness as does not exceed five hundred dollars, one and one-half per centum per month;
*451 “ (b) If the outstanding indebtedness is more than five hundred dollars, one per centum per month on the excess over five hundred dollars of the outstanding indebtedness; or”.[4] The critical language is that charges be computed on the “ outstanding indebtedness from month to month”. Defendants presently compute their finance charges on the basis of the consumer’s “previous balance ”, or the outstanding balance at the beginning (i.e., the ending balance at the close of the prior billing cycle carried forward), rather than at the close, of the current monthly billing cycle, No adjustments are made for payments or merchandise credits and returns during the current billing cycle (as they would in a declining balance situation) unless these credits equal the total amount of the previous balance, in which case no finance charge is assessed. Purchases made during the current billing cycle are likewise not included in the balance on which a finance charge is imposed. In arithmetical terms, if, for example, a customer’s balance of $500 at the close of the prior billing cycle is not wholly discharged during the current cycle, or by the following billing date, that “ previous balance” is carried forward and the finance charge assessed on the basis of $500. So, referring to our hypothetical, no adjustment is made for a payment of $450 during the current billing cycle and the finance charge is assessed for $7.50 (see, infra, pp. 452-453).
Plaintiffs urge, and the Appellate Division has sustained the proposition, that this conceded failure.to-“ recognize a pro tanto reduction of the outstanding indebtedness for the purpose of calculating the finance charges where there are substantial payments on account during [the current] billing cycle or month ” (39 A D 2d 119-120) runs afoul of “ the plain meaning ” of section 413 of the Personal Property Law, since, it results in charges on amounts in excess of the actual outstanding indebtedness, t> pmount actually due and owing, at the close of the curren billing cycle. To the extent that finance charges are asf^ssed on an amount other than that currently due and owing, lüwve is indeed something distinctly artificial about the method, its viability as an economic construct, nonetheless, resides in a *452 series of deferrals characteristic of the practice’s commercial antecedents. Measured in these terms, the' Appellate Division has misconstrued the provision, and the order appealed from should he reversed.
There are four different methods of periodically calculating finance charges on revolving charge accounts. The method used by the retailer in computing charges is set forth in full, first in the credit agreement and then at the end of each billing cycle as part of the customer’s monthly statement. Invariably provision is made for minimum payments at monthly intervals.
1. The Previous Balance Method.
Under this method, the'balance is computed at the end of a monthly billing cycle op the basis of all debits and credits through that date (closing balance). Finance charges are deferred until the end of the next billing cycle. If payment is made in full during this deferral period, no finance charge is imposed. Should the customer not elect to pay in full, the finance charge is computed on the former balance, which — because of the deferral —is both the closing balance of the prior month (hence the phrase previous balance) and the opening balance for the current month. The balance is not reduced to reflect partial payments or purchases during the month in which such payments and purchases are made. These are carried over in the closing balance for that month (prior billing cycle) or the “ previous balance ” upon which finance charges are computed in the next month (current billing cycle).
Finance charges are thus computed on the basis of the balance outstanding at the close of a monthly billing cycle, modified by all purchases and payments as of that point in time. Since the finance charge is deferred for one monthly billing cycle the customer has between 30 and 59 days, depending on the date of purchase, to avoid a finance charge.
In short, the procedure is simply one of deferred billing, but with a “ kick current account activity, except current credits which fully discharged the amount due and owing when the balance is struck (the close of the prior billing cycle), is disregardéd. Finance charges, also deferred during the current billing cycle, are then assessed at the beginning of the subsequent billing cycle retroactive to the date when the account’s previ *453 pus balance was struck and for that amount. Though there seems little in logic to commend its use, the practice makes sound business sense: the consumer enjoys one monthly billing cycle plus, depending on the date of purchase, to avoid a finance charge and without the worry of further inflating that charge by current purchases, while the retailer, where the amount owing has not fully been discharged, is free to disregard current payments — his quid pro quo for exempting current purchases — and compute his finance charge on the basis of the account’s previous balance. By relating these charges back, the retailer concentrates his assessments, sometimes recouping losses he might sustain by the apparently liberal.deferral provisions. In other words, the deferral feature is not only the system’s attraction ; it explains its over-all success.
2. The Adjusted Balance Method.
The finance charge is computed on the basis of the balance at the end of the current billing cycle, with credit for any payment made and merchandise returned during the current cycle, but without additional debits for current purchases. Finance charges computed on the adjusted balance are lower in the aggregate than those computed under other methods.
3. The Closing Balance Method (Ending Balance).
Finance charges are characteristically computed on the closing balance in the account as of the end of the current billing cycle. Allowance is made for all payments and other credits during the cycle, but also the closing balance includes a charge on all purchases made during the current cycle even though they were never billed before.
4. The Average Daily Balance Method.
The finance charge is computed upon an amount which is the sum of the amount of the actual daily balances each day during the billing cycle divided by the number of days in the billing cycle. Payments are credited on the date of receipt; and early payments or payments in excess of minimum payment due result in smaller finance charges.
Of the four methods described only two, the previous balance method and the adjusted balance method, are currently in wide *454 spread use in New York. The average daily balance method is a product of recent advances in computer technology, while the closing balance has apparently never found use in New York, at least in the context of revolving-credit arrangements. Prior to the enactment of the Retail Instalment Sales Act, the imposition of finance charges in connection with the sale of goods other than motor vehicles (see L. 1957, ch. 595) had gone unregulated Though the fact is contested, it would appear that prior to the 1957 enactment, virtually all creditors, including a number of the defendants, had computed finance charges on their revolving accounts on a previous balance basis, in preference to the only other available method, the closing balance method; and have continued to do so after passage of the act, amid increasing criticism by members of the Bar and various consumer advocates (Curran, Legislative Controls as a Response to Consumer-Credit Problems, 8 B. C. Ind. and Com. L. Rev. 409 [1967]; Caplovitz, Consumer Credit in the Affluent Society, 33 Law & Contemp. Prob. 641 [1968]: Benfield, Money, Mortgages and Migraine, 19 Case Wes. Res. L. Rev. 819 [1968]; see, also, A. W. Troelstrup, the Consumer in American Society [4th ed., 1969], pp. 144-145).
In terms of its over-all effect, the previous balance method from the' consumer’s vantage, is perhaps the least favorable method for computing finance charges. The charts analyzing various isolated transactions and comparing the finance charges resulting from the use of the different methods which punctuate the parties ’ briefs, as well as the record on appeal, invariably understate or overstate the challenged method’s potential for abuse; hence, are of questionable value in assaying the challenged practice in terms of its ordinary workings, from day to day. One thing, however, seems certain and that is that the failure of the previous balance method to consider even substantial payments during the current billing cycle in reduction of the outstanding balance upon which finance charges are based can inflate the annual effective yield to a point well beyond the nominal 18% (the periodic rate of 1%% per month times the number of periods in a year) authorized by law (Personal Property Law, § 413, subd. 3). Because of this failure to credit such payments, the Appellate Division has concluded that finance charges computed under the previous balance .method are not *455 computed on an outstanding indebtedness; hence, are unauthorized by section 413 (subd. 3). That conclusion, however, ignores the fact that the previous balance method is based upon a deferred computation of the finance charge on an outstanding indebtedness, but for other than the current billing cycle, and that credits are characteristically applied in reduction of the amount on which the charge is computed.
Undoubtedly, the term “ outstanding indebtedness ”, in its ordinary sense denotes Only the amount “ owing or unpaid ” (New York Trust Co. v. Portland Ry. Co., 197 App. Div. 422 [1st Dept.]). But the term can only be measured by reference to some particular point in time, which may well be the amount outstanding at the beginning of a cycle (under the previous balance), at the close of a cycle (under the closing balance) or on an average daily basis during the cycle (under the average daily balance). Taken alone, there is nothing in the terms which would further connote that the time for computation of charges be fixed at one rather than another point in time.
The question to be resolved, then, is whether the statute’s further use of the term “ from month to month ” compels computation of a finance charge on the basis of the outstanding indebtedness at some point in time other than at the beginning of the current billing cycle, as is defendants’ practice.
Plaintiffs argue, and the Appellate Division has agreed, that the coil joining of the words “ from month to month ” with the term “ outstanding indebtedness ” in section 413 (subd. 3) requires that in computing monthly finance charges, all payments made during the month be deducted from the outstanding indebtedness at the beginning of the current billing cycle, but that purchases made during the same cycle not be included. This follows, it is said, because the words “ outstanding indebtedness ” are modified by the words “ from month to month ” and, taken together, mean that only that part of the amount owing from the close of one month to the next may be used as a basis for computing finance charges.
Defendants, on the other hand, argue that section 413 (subd. 3) merely provides that finance charges may not exceed the amounts that may be obtained by applying the section’s statéd maximum rates at consistent monthly intervals on a customer’s outstanding indebtedness. Any method, it is said, *456 which complies with this formula is permitted by the statute. In other words# “from month to month” merely designates the periodic intervals or frequency, here monthly, at which service charges are to be computed; and since the previous balance represents a customer’s outstanding indebtedness at the beginning of each month, the statute is satisfied so long as finance charges are assessed on a monthly basis. This construction, which has found support in a case dealing with the identical problem under the California Retail Instalment Sales Act, the Unruh Act (Seibert v. Sears, Roebuck & Co., 4 CCH, Consumer Credit Rptr., par. 99164 [No. 407558, Super. Ct. Cal., Alameda Co., (May, 1972)]), finds further, if merely plausible support under section 401 (subd. 8) of the Personal Property Law, defining ‘ ‘ retail instalment credit agreement ” as: “an agreement entered into in this state, pursuant to which the buyer promises to pay, in instalments, his outstanding indebtedness from time to time ” (emphasis added); and, in the statute’s unmodified use of the words “ outstanding indebtedness ” in paragraphs (a) and (b) of subdivision 3 (Personal Property Law, § 413, subd. 3, pars, [a], [b]; see, also, Webster’s Third New International Dictionary [1965], p. 913: “ — from . . . to ... — used * * * with a repeated noun to indicate recurrence or continued succession /beg from door to door/ /a ration from day to day/ ”, Black’s Law Dictionary [4th ed., 1951], p. 797; Federal Truth in Lending Act, U. S. Code, tit. 15, § 1602, subd. [i]; Code of Fed. Reg., tit. 12, § 226.2, subd. [r] [Regulation Z]).
To be sure, as such argumentation suggests, the battle is one of words and we are provided with no real answer to the problem. posed. In suggesting that the statutory requirement may be satisfied by any charge which is computed on the amount actually owing at some point in time, here the beginning of a current billing cycle, so long as that computation is applied at consistent monthly intervals, it, nonetheless, points to the fact that the statute has no “ plain meaning ” and that its true import can only be culled from its legislative history including the uses and practices existing at the time of its enactment, as well as the statutory scheme of which it is but a part.
At the heart of the present controversy is plaintiffs’ contention' that by reason of the previous balance method and its cor *457 relative failure to give credit for merchandise returns and partial payments, defendants realize effective rates which exceed the maximum rate provision of the statute. The argument assumes that the monthly rate provisions (“ one and one-half per centum per month ”, or “ one per centum per month ”) contemplate an effective annual rate (or true interest rate), to he computed on the .basis of the ratio of authorized finance charges, expressed as percentages, to the “ adjusted balance ”.
Unlike interest charges, which are assessed for “ the loan or forbearance of money ”, (see General Obligations Law, § 5-501, as amd. by L. 1968, ohs. 349, 944,1072: specifying “ loan or forbearance of any money, goods, or things in action”) service charges on retail credit sales are generally defined as charges “for the privilege of purchasing on credit ”, expressed as a time-price differential (Hogg v. Ruffner, 66 U. S. 115 [1861]; Tierney Sons, Inc. v. Bajowski, 233 App. Div. 766, affd. 258 N. Y. 563; see, also, Dry Dock Bank v. American Life Ins. & Trust Co., 3 N. Y. 344; Mandelino v. Fribourg, 23 N Y 2d 145)[5].
*458 Retail credit is offered on either a closed-end basis (traditional time-price differential), under a retail installment contract (Personal Property Law, § 401, subd. 7), or an open-end (revolving-credit) basis (Personal Property Law, § 401, subd. 8). Under the closed-end arrangement, a contract is executed at the time a purchase is made, providing for the addition of a precomputed finance charge to the unpaid amount of the cash price, and for payment of the resulting balance in a fixed number of prorated installments (Personal Property Law, § 402). The precomputed finance charge is calculated by applying a percentage figure, the product of a fixed rate times the number of installments (Personal Property Law, § 404) to the unpaid cash price. Under the revolving charge account the account is the product of a single written agreement between retailer and customer which allows credit purchases from time to time (Personal Property Law, § 413). Finance charges, instead of being precomputed, as in a closed-end contract, are calculated periodically as a percent of monthly balances. As noted above, in both closed-end and revolving-credit Arrangements, the finance charge is treated as the difference between the cash price and time price, thus affording the seller a return on his investment; and in neither case is the resulting finance charge looked upon as interest.
Both forms of credit extension first come under regulation with the enactment of the Retail Instalment Sales Act, suggesting certain parallels in treatment. The act authorizes finance charge rates of $10 per 100 per annum on the first $500 of the principal balance and $8 per 100 per annum on amounts above $500 (Personal Property Law, § 404, subd. 1). Payments made at the times and amounts set forth in the contract translate, using the basic rate of $10 per $100, into an effective annual yield of roughly 18%. (Felsenfeld, Uniform, Uniformed and Unitary Laws Regulating Consumer Credit, 37 Fordham L. Rev. 209, 214 [1968].) So, too, with revolving credit, where the customer makes minimum payments according to the terms of his *459 agreement, the basic rate of 1%% per month translates into an effective annual yield of about 18%.
Situations will, however, arise where the rate of yield for the latter is significantly higher than those expressed: namely, where, under the previous balance method, the consumer makes payments for amounts substantially above the contract minimum but for less than the outstanding balance. A like situation obtains under installment contracts where a customer elects to make partial payments for amounts above the contract minimum, or partial payments before the time due (Personal Property Law, § 408, subd. 2). What is significant, nonetheless, is that where future transactions are timed according to an assumed pattern of occurrence, finance charges assessed on a revolving credit plan, including those computed on a previous balance basis, approximate those precomputed under the closed-end plan (Seibert v. Sears, Roebuck & Co., 4 CCH, Consumer Credit Rptr., par. 99164 [No. 407558, Super. Ct. Cal., Alameda Co., (May, 1972)], supra). Since the prospect of inflationary payment variations appears slight, and the amount involved relatively small, it is reasonable to infer that in prescribing these rate limitations, the Legislature was dealing with the “ typical transaction ” (minimum schedule payments) and, necessarily, in terms of rough approximates.
Contrary to rates quoted prospectively on an assumed pattern of activity, an effective or true rate is an expression of a relationship between not only the finance charge and the amount of credit extended, but also the period of time (in days) for which credit is outstanding (Seibert v. Sears, Roebuck & Co., 4 CCH, Consumer Credit Rptr., par. 99164 [No. 407558, Super. Ct. Cal., Alameda Co., (May, 1972)], supra). Under open-end credit arrangements, the time and amount of payments are within the exclusive control of the consumer; he alone determines the precise effective rate. On the other hand, a true rate of yield can only be fixed retrospectively, once the precise dates of the transactions involved are known to the principals. And in transactions such as revolving credit, any rate quoted prospectively must be, by definition, a nominal rate insofar as it can be an estimate of approximate costs (id.). It, therefore, follows that the rate provisions set out in section 403 of the Personal Property Law refer to limitations on nominal rates used in *460 computing finance charges and are not effective rates. Since the finance charges computed by defendants under the previous balance method are at nominal rates of 1%%, they comply with the statute’s rate limitations.
As noted above, the previous balance method has been widely employed in New York since the early 1950’s when revolving charge accounts first came into common use. It was the method most commonly used by retailers, including some of the defendants, offering revolving credit at the time of the enactment of the Retail Instalment Sales Act; and a review of the legislative history of that act discloses no intention to foreclose its continued use, though the Legislature must be presumed to have been aware of the practice[6], and it would have been a relatively simple matter to specify the method to be employed (cf. Wis. Stats. 138.05, subd. [1], par. [a]). Indeed, that the practice was recognized ih New York is supported by the enactment and subsequent repeal of the New York Truth in Lending Act (L. 1968, ch. 1072, § 1; L. 1969, ch. 1141, § 1) and the Federal Truth in Lending Act (U. S. Code, tit. 15, § 1601 et seq.; see, also, Personal Property Law, § 413, subd. 4, par. [a]), both designed to apprise consumers of such arcane practices in retail credit, and requiring, among other things, disclosure of outstanding balances at the beginning and end of the billing period (N. Y. Truth in Lending Act [General Obligations Law, art. VI], § 6-103, subd. 4, par. [b], cl. [i]), the balance on which the finance charge was computed and how that balance was determined (General Obligations Law, § 6-103, subd. 4, par. [b], cls. [i], [vi]; U. S. Code, tit. 15, § 1637, subd. [b], par. [8]). If such balance was determined before deducting all payments during the period, that fact and the amount of payment shall also be disclosed (General Obligations Law, § 6-103, *461 subd. 4, par. [b], cl. [vi]). Likewise, under the New York act, the seller was required to disclose to the buyer the method of determining the balance upon which a finance charge would be imposed (General Obligations Law, § 6-103, subd. 4, par. [a], cl. [ii]; U. S. Code, tit. 15, § 1637, subd. [b], par. [8]), implying, again, the availability of a variety of methods for computation.[7]
Under the circumstances, “ outstanding indebtedness from month to month ” merely requires that finance charges be computed at consistent monthly intervals on the customer’s outstanding indebtedness at that time. Since the previous balance provides for the consistent computation of finance charges on the customer’s outstanding indebtedness on the last day of the prior billing period — carried forward as the outstanding indebtedness at the beginning of the current period — it complies with section 413 (subd. 3).
Accordingly, plaintiffs ’ cross appeal should be dismissed and, on defendants’ appeal, the order appealed from should be reversed and the orders and judgments of Special Term, insofar as modified at the Appellate Division, reinstated.

. A second cause of action, common to each verified complaint and challenging defendants’ practice of imposing finance charges on the “ previous balance ”, computed upon previously imposed,.finance charges, is not before us.

. Since the dissent at the Appellate Division on a stated question of law is in favor of the defendants, their appeal, of course, is properly here as of right (CPLR 5601, subd. [a], par. [i]). By their notice of appeal, nonetheless, defendants limit their appeal to those parts of the order which granted declaratory and injunctive relief on a class basis. Consequently, unless the cross appeal can be prosecuted to this court as of right, the propriety of that part of the order dismissing the class action for an accounting and statutory damages is not before us.

. Each of the defendants offers a variety of charge accounts including regular charge accounts, under which the customer is required to pay his bill in full within 30 days of receipt, and different types of retail installment credit agreements ostensibly tailored to the individual customers’ needs and abilities to pay.

. Where the resulting .service charge is less than 70 cents for any month, a minimum charge of 70 cents is authorized (Personal Property Law, § 413, subd. 3, par. [c]).

. In the sale of goods, any amount charged the buyer over and above the ordinary cash price is not interest, but an amount calculated as a “ time price differential ” designed to compensate sellers for additional risks and loss of interest which would ordinarily accrue had he received immediate payment. First announced by the Supreme Court in Hogg v. Ruffner (66 U. S. 115), the doctrine provides a ready exemption for installment sales and revolving credit sales under State usury legislation which is invariably limited to interest transactions, defined as charges for the loan or forbearance of money (Dry Dock Bank v. American Life Ins. & Trust Co., 3 N. Y. 344; Mandelino v. Fribourg, 23 N Y 2d 145; London v. Taney, 263 N. Y. 439; see, also, General Obligations Law, § 5-501, as amd. by L. 1968, chs. 349, 944, 1072). Two States have recently abrogated the doctrine, holding J. C. Penney Co.’s revolving charge account agreements usurious under applicable usury statutes; in both cases finance charges were computed on an adjusted balance method (State v. J. C. Penney Co., 48 Wis. 2d 125 [1970]; Rollinger v. J. C. Penney Co., 192 N. W. 2d 699 [S. D., 1971]; see, also, Sloan v. Sears, Roebuck & Co., 228 Ark. 464 [1957]; McNish v. General Credit Corp., 164 Neb. 526 [1957]; but see Sliger v. R. H. Maey & Co., 59 N. J. 465 [1971]). Others have distinguished between installment sales and revolving charge accounts, abrogating the time-price doctrine as to the latter (see, e.g., Hare v. General Contract Purchase Corp., 220 Ark. 601 [1952]; Daniel v. First Nat. Bank, 227 F. 2d 353 [5th Cir., 1955]).
New York, along with a number of other States, has codified the dichotomy and classified finance charges for both installment contracts and revolving- *458 credit arrangements, as time-price differentials with a separate rate structure (Personal Property Law, § 401, subds. 7, 8; § 404, subd. 1; § 413, subd. 3; see, e.g., Cal. Civ. Code, § 1810.2; Del. Code Ann., tit. 6, § 4337; Md. Ann. Code, art. 83, § 153D, subd. [e]; Ill. Ann. Stat. [S. H. A.], ch. 1211/2, § 528; Pa. Stat. Tit. 69) § 1904). .

. Since the enactment of the Retail Instalment Sales Act, various bills have been introduced to eliminate the previous balance method (compare S. 7237; A. 8254 [1972]; Legis. Memorandum by Attorney-General stating section 413 of the Personal Property Law “does not require the open end creditor to use any particular method of calculating the service charge ”, with its amended version, submitted shortly after an opinion of the Michigan Attorney General had declared the previous balance method illegal and a settlement was agreed to in Montgomery Ward & Co. v. Kelley, Cir. Ct., Ingham Co., [1971] Civ. No. 12211, C.: concluding that the Legislature had indeed intended to prohibit the previous balance method).

. In striking down the previous balance method, the Appellate Division expressly approved of the adjusted balance method in computing finance charges, since “ such a method would comply with the terms of the statute in authorizing charges on the ‘outstanding indebtedness from month to month’” (39 A D 2d 116, 120). But if we are to agree with the Appellate Division that “outstanding indebtedness” means owing and unpaid — in the sense of a balance outstanding or, the sum total of debits and credits in the account at the time the balance is struck — then, it is clear that the adjusted balance method is similarly not computed upon an outstanding indebtedness.
As the term implies, under the adjusted balance method, finance charges are computed upon an amount which is an adjustment of the outstanding indebtedness in the account at the close of the billing period — payments and credits made during the current billing cycle are deducted, but purchases are not added. In any month, therefore, where purchases are made, the adjusted balance does not reflect all amounts owed at the time that balance is struck; it is not an outstanding indebtedness. Though the method is undoubtedly permitted under section 413 (subd. 3) because it does not result in high rates, the Legislature must have had some oth'-r method in mind when it spoke of “ outstanding indebtedness ”.