Edwin Kassoff, J.
This class action was commenced in May, 1975, as an independent action after a foreclosure was commenced in the fall of 1974 by Washington Federal Savings and Loan Association to foreclose a mortgage which it claimed to have on the Village Mall Townhouses, Inc.
The class action asserted eight separate causes of action against five defendants and sought the return of the contract *229 vendees’ down payments, which amounted to approximately $550,000.
Numerous settlement conferences were held, many in the presence of the court. With the assistance of the court, a settlement was achieved. Pursuant to the terms of the settlement, Washington agreed to establish a settlement fund of $475,000. The fund bears interest at the possible rate of 5.25% computed quarterly. It is estimated that this fund, with the addition of the interest, will amount to approximately $483,-000 by the date of distribution. In addition, Washington has agreed to pay $2,500 toward disbursements of this action.
Counsel for the class action plaintiffs submitted an application for attorney’s fees amounting to $85,000 plus disbursements. This application was contested by a number of the contract vendees and the Attorney-General. The Attorney-General’s objection was only to the amount of fees sought by counsel.
The issue before the court is whether plaintiff’s attorney in Action No. 2 is entitled to an award of attorney’s fees in the sum requested.
The authority of the court to award attorney’s fees to a prevailing plaintiff’s counsel is grounded in the traditional equity powers of the court. (See Sprague v Ticonic Bank, 307 US 161, 166; Mills v Electric Auto-Lite Co., 396 US 375, 392-393.)
Two major rationales exist for the award of fees in the usual case where a recovery fund is created for an entire class of plaintiffs. The first is that the attorney’s efforts have benefited those members of that class not directly represented by him; an unjust enrichment would therefore occur if those persons were permitted to enjoy the benefit without contributing to the attorney’s compensation. The second rationale rests on public policy grounds; an attorney prosecuting private claims for violations of the antitrust, securities or consumer protection laws is viewed by the courts as a "vindicator of * * * public policy.” (See Alpine Pharmacy v Pfizer & Co., 481 F2d 1045, 1050; Hammond, Stringent New Standards for Awards of Attorney’s Fees, (The Business Lawyer, vol 32, p 523.)
Until recently, the practice of the Federal courts in awarding attorney’s fees in class actions has been to award a percentage of the settlement of the judgment obtained. Petitioner argues that the average range of said award is be *230 tween 10 and 30% of the settlement (see Rosenfeld v Black, 56 FRD 604, 605-606) and that historically the courts in New York have similarly tended to award fees of not less than 20% of the recovery. (See Neuberger v Barrett, 180 Misc 222.) Measured as a percentage of the settlement, the $85,000 fee sought constitutes approximately 18% of the total recovery. This percentage, petitioner argues, is well within the guidelines of both the Federal and New York decisions.
This practice of awarding a percentage of the settlement has now been changed. The Federal courts have set forth a complete set of new and rigorous standards for the award of attorney’s fees. Both the Third Circuit Court of Appeals, in Lindy Bros. Bldrs. v American Radiator & Std. Sanitary Corp. (487 F2d 161) and the Second Circuit, in City of Detroit v Grinnell Corp. (495 F2d 448) explicitly disavowed the traditional "percentage fee approach” to fee awards.
In contrast to the vast body of Federal law treating the question of attorney’s fees in class action litigation, there is a relative dearth of New York cases. Moreover, the recent enactment of CPLR 909 borrows generously from rule 23 of the Federal Rules of Civil Procedure and case law relevant thereto. (See 2 Weinstein-Korn-Miller, NY Civ Prac, par 909.03.)
For the sake of the court’s integrity and the integrity of the legal profession, it is important that the courts avoid awarding "windfall fees” and should likewise avoid every appearance of having done so. To this end the court must always heed the admonition of the Supreme Court in Trustees v Greenough (105 US 527, 536-537), when it advised that fee awards under the equitable fund doctrine were proper only "if made with moderation and a jealous regard to the rights of those who are interested in the fund”. (See, also, City of Wewoka v Banker, 117 F2d 839, 841.)
The new doctrine expounded by these cases rests upon the premise that the purpose of the fee is "to compensate the attorney for the reasonable value of services benefiting the unrepresented [class members].” (Lindy Bros. Bldrs. v American Radiator & Std. Sanitary Corp., supra, p 167.)
In awarding attorney’s fees for prosecuting class actions, the court must determine how many hours were spent in what manner by which attorneys, then attempt to value these services by fixing the reasonable hourly rate for the time of the attorneys. The valuation process requires definite informa *231 tian, not only as to the way in which the time was spent (discovery, oral argument, negotiation, etc.) but also as to the experience and standing of the various lawyers performing each task (senior partner, junior partner, associate, etc.). (See Lindy Bros., supra, p 167; Grinnell, supra, p 471.) Thus, every plaintiff's lawyer seeking fees must be able to show the court as much documentation as possible concerning every hour of legal services for which he seeks remuneration. An attorney’s inability to do so will automatically put into question the good faith of his claim, and virtually destroy his chances for full compensation. (See Liebman v Petersen Coal & Oil Co., 63 FRD 684, 702.) The court then multiplies the number of hours by the hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation.
Under the Lindy-Grinnell doctrine, the courts do not consider that a "just and adequate fee” can be ascertained by merely multiplying an attorney’s hours by his typical hourly fees. The courts regard this calculation as "the only legitimate starting point for analysis”. To this, "other, less objective factors” are applied to reach the ultimate award. The foremost of these factors is the attorney’s "risk of litigation” (Grinnell, supra, p 471), i.e., the fact that despite the most vigorous and competent of efforts success is never guaranteed; the greater the probability of success, of either ultimate victory on the merits or of settlement, the less such consideration should serve to amplify the basic hourly rate. Other generally accepted factors, as stated in Grinnell (p 470) are:
"(1) whether plaintiff’s counsel had the benefit of a prior judgment or decree in a case brought by the Government,
"(2) the standing of counsel at the bar — both counsel receiving award and opposing counsel,
"(3) time and labor spent,
"(4) magnitude and complexity of the litigation,
"(5) responsibility undertaken,
"(6) the amount recovered,
"(7) the knowledge the court has of conferences, arguments that were presented and of work shown by the record to have been done by attorneys for the plaintiff prior to trial,
"(8) what it would be reasonable for counsel to charge a victorious plaintiff.”
Additional factors that the court must consider are the *232 contingent nature of success and the novelty of the issues presented.
In keeping with the requirement of the Lindy-Grinnell doctrine that the trial court articulate and fully disclose the grounds for its fee award, those cases also require the trial court to hold a full evidentiary hearing prior to the fee award, at least where any part of the proposed award is seriously contested.
In view of the opposition of a number of the contract vendees and the Attorney-General to the fee application, the court directed that an evidentiary hearing be held, on notice to members of the class, on the fairness of the proposed settlement and the application for the award of attorney’s fees and disbursements.
The hearing was held on January 14, 1977. All interested parties were given an opportunity to testify. There was no opposition to the settlement and it was approved by the court. Decision was reserved on the application for attorney’s fees and the court gave the parties time to submit additional affidavits.
The court, in arriving at its award, has taken into consideration all of the evaluations required by the Lindy-Grinnell rule.
The court, in determining a reasonable hourly rate for each of the attorneys who worked on this case, has analyzed the time spent by each attorney and the type of work performed and the position of each attorney in the firm. The court then multiplied the number of hours that each attorney worked on the case by the hourly amount to which attorneys of like skill in the area would be entitled for a given type of work on the basis of an hourly rate of compensation, and arrived at the following allocations:

I do not find great dispute as to the hours allocated to each category of activity charged by each of the attorneys. I have made changes in the hourly rates requested and used in fixing the compensation. These changes are based upon my evalúa *233 tian of the services rendered by counsel in accordance with the factors set forth in the Lindy-Grinnell doctrine. The court carefully reviewed the testimony taken at the hearing and thoroughly reviewed the affidavits, briefs and time records submitted to the court.
The risks of litigation, the contingency nature of compensation, the novelty and ingenuity of the action, the complexity of the issues and the success achieved merit a greater compensation than set forth above. Accordingly, I fix petitioner’s total compensation at $75,000. In arriving at this figure the court has taken into consideration the time spent by petitioner in preparing and supporting its fee application.
Counsel has fee arrangements with some of the parties, but has agreed to accept the. court’s award as full compensation. The court has also been advised that none of the 116 claimants has elected to opt out of the settlement.
Finally, there is an issue as to claims by other attorneys for compensation from counsel here out of any fee which the court might award. Petitioning counsel has agreed to make certain payments out of its fee to settle those claims. Since this does not result in duplication of payment, the court has no objection to the arrangement.
Counsel is awarded disbursements not to exceed $2,500, said disbursements to be paid by Washington, pursuant to the stipulation of settlement. Disbursements are to be itemized in the order to be entered hereon.