OPINION OF THE COURT
Andrew J. DiPaola, J.
This is an application pursuant to CPLR 909 for an award of counsel fees in a class action commenced in 1975 against the defendants and successfully concluded after two appeals in favor of the plaintiffs. The amount recovered for the class totals over $1,758,965.98 comprised of the judgment itself in the sum of $1,229,094.50, plus interest to August 21, 1981, as well as interest to date. While the three counsel for the plaintiffs have agreed among themselves that this court should award counsel fees aggregating no more than $500,000, and members of the class were so notified in a notice published on or about March 12, 1981, they nevertheless have requested the following fees:
Counsel for plaintiff Sternberg
(Kass, Goodkind, Wechsler & Labaton) $256,882.50
Counsel for plaintiff Shaftan
(Sheldon V. Burman) 463,760.00
Counsel for plaintiff Ostor
(Elder & Walsky) 201.000.00
$921,642.50
*805 Moreover, plaintiffs seek to recover the attorneys’ fees from the defendants themselves, rather than from the fund created by the recovery of the judgment plus interest. This court must thus consider two issues, namely, the source of the attorneys’ fees, and the amount to be awarded each of the three firms.
THE FACTS
Some background is required in order to evaluate the services performed by the attorneys in question.
This action was initially commenced by plaintiff Stern-berg against defendants Citicorp Credit Services, Inc. (CCSI) and Citibank, N. A. alleging a class action on behalf of all holders of Citibank Master Charge cards. The complaint charged that on or about April 5, 1976 the defendants unilaterally modified their October 1, 1975 retail installment credit agreement and improperly imposed a 50 cent service charge with respect to each billing cycle in which cardholders made at least one purchase and thereafter made payment for such purchase within 25 days following the first billing cycle which included the charge. The complaint sought the return to the class of all finance charges obtained by the allegedly illegal practice and injunction against the continuance of the practice. By order of this court dated November 5, 1976 (Gibbons, J.), Sternberg’s motion for class certification was granted and the class was to consist of “all persons who are holders of Master Charge Credit Cards issued by Citicorp Credit Services, Inc. and/or Citibank, N.A. as of April 5, 1976”.
Four months after the Sternberg action was commenced, plaintiff Shaftan began his action. In addition to alleging the general common-law illegality of the defendants’ unilateral change in the credit agreement, as the Sternberg complaint did, the Shaftan complaint also sought relief based upon violations of section 413 of the Personal Property Law and sections 2-302 and 1-203 of the Uniform Commercial Code.
By order of this court dated February 18, 1977 (Young, J.), the Shaftan action was consolidated into the Sternberg action, the defendants’ motion for the appointment of lead *806 counsel for the plaintiffs was denied, and joint disclosure was directed.
A third action was commenced by plaintiff Ostor on January 28, 1977 based upon the theory of mistaken payment and common-law fraud. This new action was consolidated into the previously consolidated Sternberg action by order of this court dated July 12, 1977 (Burstein, J.). A cross motion by plaintiff Shaftan to designate him as class representative was denied by the order of July 12, 1977.
The next step in the scenario took place when defendants moved for partial summary judgment dismissing the first and second causes of action in the Shaftan complaint, which motion was granted on October 27,1977 (Oppido, J.), based upon the landmark case of Zachary v Macy & Co. (31 NY2d 443). Defendants then moved for summary judgment with respect to all of the causes of action set forth in the Sternberg, Ostor and Shaftan complaints. Plaintiff Shaftan moved for summary judgment based upon violation of section 413 of the Personal Property Law set forth in the third cause of action of the Shaftan complaint.
By decision dated June 9, 1978 at a Special Term of this court, the undersigned directed summary judgment in favor of the plaintiffs, holding that the minimum 50 cent finance charge collected by Citicorp from holders of Citibank Master Charge cards between June, 1976 and January 11, 1978 was unlawful,[1] and the defendants were directed to refund said sums to the plaintiffs. In addition, plaintiffs were awarded attorneys’ fees pursuant to CPLR 909, and a hearing was directed to determine the reasonable value of the legal services rendered. An order was entered pursuant to this decision on September 14, 1978 and an appeal taken by the defendants.
On August 6, 1979 the Appellate Division, Second Department, unanimously affirmed the order and judgment of this court which granted summary judgment in favor of plaintiffs Sternberg and Shaftan and dismissed plaintiff Ostor’s cause of action for common-law fraud (Sternberg v Citicorp Credit Servs., 69 AD2d 352). Defendants’ motion *807 for leave to appeal to the Court of Appeals was granted on October 4,1979 based upon a certified question of law, and on June 3, 1980 the Court of Appeals unanimously affirmed the order of the Appellate Division (50 NY2d 856).
THE FUND
Pursuant to the judgment dated September 14,1978 and the stipulation between the parties entered into on July 22, 1980, the defendants agreed to set up an escrow fund in the amount of $1,500,000 and to make a report to the court regarding the amount of damages to which the class would be entitled and how they proposed to identify the members of the class.
In December, 1980 the defendants advised the court that they had determined that 641,626 members of the class had been assessed one or more 50 cent charges aggregating $1,229,094.50, and that interest due to the class at the legal rate of 6% from the first day of each month in which the charge was assessed until July 31, 1980 aggregated an additional $245,078.02. In addition, from July, 1980 to the present, the judgment fund which has been invested in high interest-bearing certificates of deposit and commercial paper (deposited appropriately enough in Citibank) has earned additional interest in excess of $200,000.
CLASS ACTIONS AND FEE AWARDS
Before fixing a dollar value on the services performed by the three firms involved in this case, a few observations are in order regarding the nature of class actions and the appropriate attitude to be taken towards an attorney who commences a class action.
Class actions are still relatively new in New York, CPLR article 9 having only been enacted into law in 1975. By their very nature, class actions involve several conflicting policies. The purpose behind the legislation was not to create a windfall for enterprising members of the Bar who, by virtue of stock holdings or other financial endeavors, might be in a position to spot an unfair corporate practice. Rather, the procedure for class actions was designed to liberalize the procedural requirements so that individuals with claims, that would otherwise not justify the costs of litigation would now be able to pool their resources and *808 collectively seek relief (see, generally, Memorandum of Governor Carey upon signing the 1975 statute, NY Legis Ann, 1975, p 426). On the other hand, it was recognized that the class action device was a potent weapon of great coercive power and subject to gross abuse, including the stirring up of unwarranted litigation and efforts designed purely for client solicitation (NY Legis Ann, 1975, p 426).
There is, then, a delicate balance to be maintained by the courts, lest the image of the class action lawyer as a champion of justice become tarnished and tawdry. The dissent by Judge Van Graafeiland in Van Gemert v Boeing Co. (590 F2d 433, 445, affd 444 US 472) sounds a note of warning that the golden goose not be killed: “This means that attorneys may sue on behalf of unknown and unnamed individuals, secure a money judgment, ostensibly on their behalf, and pocket a substantial part of the judgment funds earmarked for non-claiming absentees, without these absentees even knowing what has happened. Apparently, our colleagues in the majority either believe this is not occurring in the instant case or else deem its occurrence to be of no consequence. We disagree on both counts. If lawyers must receive this sort of favored treatment to encourage the bringing of class actions, perhaps the game is not worth the candle; the public is giving up more than it is receiving in return”.
Of course, in the case at bar, the interest on the fund itself will more than compensate the attorneys in question and hence, there is no danger of the dire possibilities envisaged by the dissenting opinion quoted above. Nevertheless, this court is mindful that every decision awarding fees to class action attorneys is a building block upon which to premise future awards. Indeed, the eminent counsel in the case at bar have cited their own past efforts and fees in other class actions as relevant data to be considered in fixing their award.
Viewing the class action attorney as the “private attorney general” who furthers important public interests through his individual suit (cf. Incarcerated Men of Allen County Jail v Fair, 507 F2d 281, 284), it is this court’s determination that a dash of noblesse oblige must be incorporated into the complicated formula used to calculate fee awards.
*809 THE SOURCE FOR PAYMENT OF ATTORNEYS’ FEES
As stated previously, it was agreed by plaintiffs’ counsel that the fees would not exceed $500,000, which sum represents accrued interest on the judgment fund.
CPLR 909, which is a codification of the class action exceptions to the American rule (whereby the prevailing party in a lawsuit is not entitled to recover attorneys’ fees from his adversary) vests the court with discretion to award attorneys’ fees to the representatives of the class based upon the reasonable value of legal services rendered, and to allow recovery from the opponent of the class “if justice requires”. “If a class action results in the creation of a fund, it is traditional to award the successful attorney a reasonable fee from the fund.” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR, C909:l, p 348.)
Attorneys’ fees have been charged as costs against a defendant only where the defendant has been guilty of fraudulent, groundless, oppressive or vexatious conduct. (See, e.g., Incarcerated Men of Allen County Jail v Fair, supra; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR, C909:l, pp 348-349; 2 Weinstein-Korn-Miller, NY Civ Prac, par 909.02.)
Although plaintiffs’ counsel have characterized the defendants’ practice as “unconscionable” and warranting the assessment of legal fees, this court does not agree. In view of the decision in Zachary v Macy & Co. (31 NY2d 443, supra) and the Legislature’s subsequent amendment of subdivision 3 of section 413 of the Personal Property Law by adding paragraph (f), it cannot be said that the defendants’ interpretation of section 413 was without a rational basis or that their imposition of a finance charge, while incorrect, rose to the level of fraudulent or vexatious conduct (cf. L 1980, ch 883, § 85).
Moreover, plaintiffs’ counsel concede that this case posed substantial legal questions and that the liability of defendants was far from certain.
Accordingly, this court determines that consistent with traditional practice, the judgment fund and its accrued interest is the appropriate source for the payment of the attorneys’ fees.
*810 THE AMOUNT OF THE AWARDS
The criteria used in establishing fee awards in State class actions are set forth in Washington Fed. Sav. & Loan Assn. v Village Mall Townhouses (90 Misc 2d 227, 231-232) as follows:
“‘(1) whether plaintiff’s counsel had the benefit of a prior judgment or decree in a case brought by the Government,
“ X2) the standing of counsel at the bar — both counsel receiving award and opposing counsel,
“ X3) time and labor spent,
“ X4) magnitude and complexity of the litigation,
“X5) responsibility undertaken,
“ X6) the amount recovered,
“ X7) the knowledge the court has of conferences, arguments that were presented and of work shown by the record to have been done by attorneys for the plaintiff prior to trial,
“ X8) what it would be reasonable for counsel to charge a victorious plaintiff.’
“Additional factors that the court must consider are the contingent nature of success and the novelty of the issues presented.”
These standards are derived from the two leading Federal cases, City of Detroit v Grinnell Corp. (495 F2d 448) and Lindy Bros. Bldrs. v American Radiator & Std. Sanitary Corp. (487 F2d 161), which rejected the prior Federal practice of awarding fees based on a percentage of the judgment or settlement obtained. As pointed out by Justice Kassoff in Washington Fed. (supra, p 230) “For the sake of the court’s integrity and the integrity of the legal profession, it is important that the courts avoid awarding ‘windfall fees’ and should likewise avoid every appearance of having done so.”
Unlike Washington Fed. (supra), in which there was only one petitioning counsel, the case at bar presents three separate class counsel who have submitted competing fee applications. Each counsel takes credit for having benefited the class. Indeed, Mr. Burman, counsel for plaintiff *811 Shaftan, claims that through his efforts, the class benefited in the amount of $5,000,000. To reach this number, Mr. Burman has added to the judgment and accrued interest the “further benefits” of payment of administration costs, the costs of the notice to the class and the legal fees themselves. Seeking an award of $463,000, cqunsel claims that this amount is only 9% of the “quantified monetary benefit” or 28% of the actual fund. Mr. Burman suggests a multiple of four for his “lodestar” fee,[2] which translates into 4 x 760 hours of service by himself at the rate of $160 per hour and 4 x 30 hours of service by his associate at the rate of $90 per hour. The total requested is $463,760, plus disbursements in the sum of $597.11.
Counsel for plaintiff Sternberg, Kass, Goodkind, Wechsler & Labaton allege that they have expended 1,343.75 hours, based on time records of 10 attorneys and various paralegals, law clerks and legal assistants. Kass, Goodkind seeks a multiple of two for the lodestar figure. They claim hourly billing rates of $150 to $175 for the partners who worked on the case and $85 to $120 per hour for the associates. The total fee sought is $256,882.50, plus disbursements of $3,001.52. Kass, Goodkind also alleges that the ratio of the requested fee to the judgment fund is 17% and represents 34% of the aggregate amount of fees sought by plaintiffs’ counsel.
The attorney for plaintiff Ostor, Mark Elder, seeks fees totaling $201,000, plus disbursements in the amount of $650.94. Mr. Elder alleges having spent 670 hours on this litigation and seeks compensation at the rate of $150 per hour. He multiplies the lodestar figure of $100,500 by two to reach the requested fee.
In opposition to the fee application, defendants argue that there was a multiplicity of nonproductive hours by plaintiffs’ counsel which requires a reduction in the fee award. They further allege that the lodestar figure requested by the three counsel should be substantially reduced because of (1) the multiplicity of counsel and the *812 duplication of services; (2) the amount of time devoted to work on claims which were dismissed and did not therefore benefit the class; and (3) the disputes between counsel which caused unnecessary time to be spent and did not benefit the class.
An examination of the record indicates that over the six-year history of this case, each counsel at a different time participated significantly in the litigation. Moreover, all three of the counsel entered the case with the requisite background in class action litigation, as noted by Justice Young when he declined to appoint lead counsel and noted that “duplication can be eliminated by cooperation between plaintiffs’ eminent and experienced counsel”.
Moreover, there is no doubt that each of plaintiffs’ counsel asserted legal theories which challenged the 50 cent minimum finance charge, and which contributed in some manner to the end result whereby the finance charge was stricken. While counsel in their papers bicker over whose theory was successful, the order of this court awarded summary judgment to all of the plaintiffs and did not contain particularization as to which causes of action were to be granted summary judgment. All of the memoranda submitted by counsel at the time of the motion were of assistance to this court in determining that subdivision 3 of section 413 of the Personal Property Law had been violated. However, only the third cause of action in the Shaftan complaint ultimately prevailed upon appeal. In that sense, the court recognizes that the achievement of Mr. Burman entitles him to a greater share of the counsel fees to be awarded herein.
Using the Lindy-Grinnell rule as stated in Washington Fed. Sav. & Loan Assn. (supra) the court has duly considered all of the factors required to be considered, including the attorneys’ “risk of litigation”. While it is true that the Zachary opinion (31 NY2d 443, supra) seemed an obstacle to the success of this case, the Legislature has viewed the matter from both sides and has enacted legislation both consistent with and in opposition to the result achieved by this case (cf. L 1977, ch 317; L 1980, ch 883, § 85).
This court has painstakingly analyzed the time spent by each attorney. In analyzing the affidavits and briefs sub *813 mitted, the court took into account that an inordinate amount of time was spent on such matters as plaintiff Shaitan’s examination before trial of plaintiff Ostor, to ascertain his motives in commencing the litigation, as well as a motion by plaintiff Sternberg, joined in by plaintiff Ostor for a protective order.
Another example of legal services which can hardly have benefited the class is plaintiff Shaitan’s motion by order to show cause on or about August 20, 1979 for an order prohibiting plaintiffs Sternberg and Ostor from acting on behalf of the class members in further prosecution or settlement of this action.[3] Needless to say, such a motion generated voluminous opposition papers and surreplies, filled with accusations and innuendoes by one attorney against the other, all of which this court has reviewed in depth.
While there was little duplication of services, there was an abundance of time spent on barnyard scrambling for recognition. It is well established that the time attorneys devoted to having themselves designated lead counsel is not compensable. (Matter of Four Seasons Securities Laws Litigation, 59 FRD 657.) This court has reduced both the number of hours submitted by plaintiffs’ counsel and the lodestar figure to take into account the nonproductive time spent on this case.
The court has also considered the actual damages sustained by each member of the class, approximately $2 a person, which has some relevance, considering that the purpose of the fee is “to compensate the attorney for the reasonable value of services benefitting the unrepresented [class members]” (Lindy Bros. Bldrs. v American Radiator & Std. Sanitary Corp., 487 F2d 161, 167, supra).
Lastly, the court has also taken into account the “coat tails” argument, and who rode upon whom. While there is no doubt that Mr. Burman carried the day, much credit must be given to the firm of Kass, Goodkind, Wechsler & Labaton for initiating the class action and for their participation prior to the decision of the Appellate Division which *814 only sustained the third cause of action in the Shaftan complaint. A lesser amount must be awarded to Mr. Elder, both by reason of his late entry into the field, and the dismissal of his complaint.
The court wishes to compliment all of the counsel herein for their perseverence and dedication. While their zeal occasionally got out of hand, they have all acted in the best public spirit and, as private Attorney-Generals, have benefited their unknown clients.
Based on the foregoing, the court hereby allocates a fee of $250,000, plus $597.11 in disbursements to Sheldon V. Burman, Esq. A fee of $150,000, plus $3,001.52 in disbursements is awarded to the firm of Kass, Goodkind, Wechsler & Labaton, Esqs. A fee of $75,000 plus $650.94 in disbursements is awarded to Mark J. Elder, Esq.

. In 1977, the Legislature amended subdivision 3 of section 413 of the Personal Property Law, effective January 1, 1978 (L 1977, ch 317). On January 11, 1978 CCSI discontinued the imposition of the service charge announced in the April, 1976 letter.

. The lodestar approach suggested by City of Detroit v Grinnell Corp. (supra) takes the time spent on the case times the hourly fee charged by attorneys of like skill and adds a multiplier to reflect the risk factor involved in the case. The “risk” includes any prior relevant government action, whether other unrelated issues have been commenced, and whether the issues are novel.

. This motion was made after the victory by the plaintiffs on the summary judgment motion and after the appeals were argued to the Appellate Division.