**In re FELIX CONTRACTING CORP'N, Debtor.**

**Bankruptcy No. 85 B 20441.**

United States Bankruptcy Court,
S.D. New York.

Feb. 27, 1986.

Grutman Miller Greenspoon Hendler & Levin, New York City, for Felix Contracting Corp'n; John R. Marvin, of counsel.

Marcus, Ollman & Kommer, New Rochelle, N.Y., for Westchester Hudson Fuel Co.; John S. Kommer, of counsel.

## DECISION ON OBJECTION TO CLAIM OF WESTCHESTER HUDSON FUEL CO.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 11 debtor, Felix Contracting Corp'n ("Felix"), objects to the portion of a claim filed by Westchester Hudson Fuel Co., Inc. ("Westchester") relating to finance charges on diesel fuel and gasoline sold to the debtor in connection with a construction job performed by the debtor.

Westchester contends that the finance charges in question were incurred pursuant to a contract formed with the debtor because a legend on the bills it sent to the debtor stated that such charges would be made and the legend became part of its contract with the debtor. The debtor contends that the claim for finance charges is in the nature of a penalty.

### FACTS

1. Felix is a corporation doing business as a construction contractor.

2. On September 4, 1985 the debtor filed a petition for a reorganization under Chapter 11 with this court.

3. Westchester made numerous deliveries of diesel fuel and gasoline to the debtor at a construction site where the debtor was performing subcontracting work. (the "Stone Oaks job"). The work was performed by the debtor under a construction contract with Sperry Construction Corp. ("Sperry"). The debtor's contract with Sperry was assumed by the debtor pursuant to 11 U.S.C. § 365.

4. At the time the debtor filed its petition there remained a balance due Westchester of $49,543.60 exclusive of the finance charges Westchester asserts is due it.

5. On October 11, 1985 Westchester filed its proof of claim in the amount of $63,524.88. Westchester asserts that it is due $53,199.03 of that for the Stone Oaks job inclusive of the finance charges. The balance of the claim is ascribed to other contracts with the debtor. Sperry is now holding a fund of money to be used to pay the charges attributable to the performance of the construction contract, including the charges in the claim filed by Westchester.

6. Each invoice from Westchester to the debtor for deliveries of fuel products to the job site contains the following statement at the bottom:

A Finance Charge of 1½% per month, which is an Annual Percentage Rate of

18%, will be charged on accounts not paid within 30 days.

7. There is no evidence that the debtor ever voiced any objections to Westchester with respect to the finance or interest charge.

8. The difference between the $53,-199.03 claimed by Westchester as due from the debtor, inclusive of finance charges, and the $49,543.60 balance claimed by Westchester, exclusive of finance charges, is $3655.43, and not the $4,016.66 asserted by Westchester as part of its claim.

## DISCUSSION

■ Although Westchester's claim for a finance charge or interest is in issue, there is no need to look to 11 U.S.C. § 502(b)(2), which limits a creditor's right to claim prepetition interest up to the date of the filing of the bankruptcy petition. This is so because the debtor has elected, with approval of the court, to assume the contract in question pursuant to 11 U.S.C. § 365. Accordingly, the debtor's obligations under this contract are accorded postpetition administration priority status under 11 U.S.C. § 507. "If an executory contract ... is assumed after the case is commenced, such assumption creates a new administrative obligation of the estate." 1 Norton Bankr.L. & Prac. § 23.05. Therefore, the filing of the debtor's Chapter 11 petition did not cut off any rights that Westchester may have with respect to its claim for finance charges or interest applicable to any payments due for petroleum products furnished to the debtor under the contract in question.

Both the debtor and the creditor are domestic corporations whose principal businesses are located in New York. The contract for Westchester's sale of fuel products to the debtor was also made in New York. Accordingly, reference must be made to New York's Uniform Commercial Code in order to resolve the conflict between the parties. Section 2–208 of the N.Y.U.C.C. controls this controversy and reads as follows:

(1) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

(2) The express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance and course of performance shall control both course of dealing and usage of trade (Section 1–205).

(3) Subject to the provisions of the next section on modification and waiver, such course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance.

■ In this case the course of dealing between Westchester, as seller, and the debtor, as purchaser, reflected a delivery of fuel products to the job site, as requested by the debtor followed by a written delivery receipt signed by Westchester's fuel truck driver. Thereafter, Westchester forwarded to the debtor a written statement of account, describing the quantity of fuel products delivered to the debtor and listing the dates of delivery and the charges for the items furnished. Each written statement contained a notation on the bottom that a finance charge of 1½% per month, which is an annual percentage rate of 18%, will be charged on accounts not paid within 30 days. There was no evidence that the debtor ever objected to Westchester with respect to the provision calling for a finance charge for payments beyond 30 days. This course of dealing between the parties is consistent with the fact that the printed language at the bottom of Westchester's invoiced statements which provided for a finance charge of 1½% per month for payments beyond 30 days of delivery was incorporated as part of the sales con-

tract between the parties. As stated in § 1–205(3) of the N.Y.U.C.C.:

> (3) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement.

In *Lockwood Corp. v. Black*, 501 F.Supp. 261 (N.D.Tex.1980), *aff'd* 669 F.2d 324 (5th Cir.1982), it was held that a vendee's receipt of a series of invoices which contained a statement calling for an 8% service charge reflected a course of dealing in accordance with § 1–205 of the U.C.C. in support of the vendor's right to collect the 8% service charge. The vendee's failure to object to the vendor's series of invoices which contained the service or interest charge was held to be supportive of the binding effect of such charge. This conclusion was stated as follows:

> According to U.C.C. § 2–208(1), "Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement." *See also* U.C.C. § 2–207(3). The court then concludes that the parties agreed to the application of an interest charge despite the lack of a written document.

*Lockwood Corp. v. Black*, 501 F.Supp. at 265 (footnote omitted).

This point was similarly expressed by Mr. Justice Blackman, when sitting as Circuit Court Judge, in *Continental Casualty Co., Inc. v. Allsop Lumber Co.*, 336 F.2d 445, 458 (8th Cir.1964), *cert. denied,* 379 U.S. 968, 85 S.Ct. 662, 13 L.Ed.2d 561 (1965), when he ruled:

> The last of the two paragraphs quoted from Exhibit A certainly authorizes the charging of interest. Allsop's invoices flatly state that interest will be charged 90 days after arrival of the goods. No objection to this provision was made by D & L as the shipments and the invoices

were received. Exhibit A and the invoices are part of the contract. We therefore need not look to state law as we would have to do if the contract between the parties were silent as to interest. We conclude that the district court judgment should have made provision for prejudgment interest.

Having concluded that the debtor is liable for a finance charge or interest at the rate of 1½% per month for payments made beyond 30 days from Westchester's deliveries to the job site, there must next be determined whether such charge constitutes an impermissible penalty.

### *Interest or Finance Charge*

■ The debtor contends that the charge of 1½% per month on payments made beyond 30 days from deliveries constitutes an impermissible penalty. Section 57(j) of the former Bankruptcy Act of 1898 flatly disallowed penalties claimed by governmental units. Under 11 U.S.C. § 726(a)(4) of the Bankruptcy Code, penalty claims and punitive damages whether governmental or private, are not disallowed but are relegated to a fourth level in the distribution scheme, below that of unsecured claims. Nonetheless, this provision is expressly limited to prepetition penalties and punitive damage claims. Hence, statutory subordination does not apply to penalties and punitive damages incurred by a trustee or debtor in possession in the course of operating the debtor's business, or where prepetition executory contracts and leases are properly assumed by the trustee or debtor in possession pursuant to 11 U.S.C. § 365 after the filing of the petition for relief. *See Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.)*, 755 F.2d 200, 202 (1st Cir.1985); *Perpetual American Bank FSB v. District of Columbia (In re Carlisle Court, Inc.)*, 36 B.R. 209, 218 (Bankr.D.D.C.1983). Therefore, if the finance charge of interest claimed by Westchester is to be disallowed, it must be done as a result of state law rather than as a consequence of offending any of the provisions of the Bankruptcy Code.

██ The general rule in New York is that where a contract calls for a penalty which is plainly disproportionate to a possible loss arising from nonperformance of the contract, such penalty will not be sustained as liquidated damages, whereas a true liquidated damages provision will be allowed where actual damages may be difficult to determine and the sum stipulated is not plainly disproportionate to the possible loss. *See United Merchants and Manufacturers, Inc. v. The Equitable Life Assurance Society of the United States (In re United Merchants and Manufacturers, Inc.)* 674 F.2d 134, 142 (2d Cir.1982). There was no evidence introduced by the debtor in this case in support of its objection to reflect whether or not a 1½% per month finance charge exceeded the damages suffered by Westchester as a consequence of any late payments for fuel products sold and delivered to the debtor at the job site. Westchester maintains that it must obtain financing in order to purchase the products which are sold to the debtor. Whether or not the finance charge or interest claimed by Westchester is a substitute for performance or an unenforceable penalty depends on the facts of each case.

The debtor relies on *In re Oahu Cabinets, Ltd.*, 12 B.R. 160 (Bankr.D.Hawaii 1981), and cases cited therein, for the proposition that the finance charge in this case constitutes an unenforceable penalty. In the *Oahu* case the bankruptcy court found that the debtor had established that a late charge of an amount equal to the higher of four cents for every dollar past due, or five dollars for each billing rendered by the creditor for a past due amount was an improper effort to extract a penalty for late payment. The court found this late charge was not a substitute for the creditor's out of pocket costs of collection of back rent and attorney's fees. The debtor in the *Oahu* case successfully proved that, taken as a whole, the late charges were intended to be more than compensatory. The debtor in this case has failed to sustain its burden of persuading this court that the finance charge for late payments is not compensatory.

The debtor had it within its control to avoid the finance charge by paying its bills within the allowed credit period of thirty days. The finance charge was incurred only if the debtor failed to comply with the terms of credit. Unlike true interest charges, which are assessed for the loan or forbearance of any money, finance charges are generally enforceable in New York as charges for the privilege of purchasing on credit. *Zachary v. R.H. Macy & Co., Inc.*, 31 N.Y.2d 443, 458, 340 N.Y.S.2d 908, 293 N.E.2d 80 (1972); *Congress Financial Corp. v. Patti*, 26 A.D.2d 924, 274 N.Y.S.2d 711 (1st Dep't 1966). Having failed to make timely payments in accordance with the terms of sale, the debtor may not now object to the finance charges which were imposed by Westchester to compensate it for the extended credit.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and the subject matter at issue pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

2. The debtor has failed to sustain its burden of proving that Westchester's claim for finance charges in the sum of $3,655.43 should be disallowed as an impermissible penalty.

3. Westchester's claim for finance charges in the sum of $3,655.43 is allowed and the debtor's objection to this claim is dismissed.

SUBMIT ORDER on notice in accordance with the foregoing.