*792 OPINION OF THE COURT
Charles E. Ramos, J.
The attorney for the respondents tenants (tenants) in the above-captioned consolidated proceedings moves, on notice to his clients, for an order approving that portion of a stipulation of settlement that provides for the payment of his fee. This motion was made at the urging of this court in light of (a) the ethical problems identified in this court’s prior determination in these proceedings dated August 4, 1986, and (b) the failure of the tenants’ attorney to comply with the terms of that order.
In that prior order, this court refused to approve that portion of the stipulation of settlement which provided that a fee of undisclosed amount was to be paid to the tenants’ attorney by the petitioner landlord herein (the adversary) who was sponsoring a conversion of the subject property from a rental to a cooperative.
The tenants were opposed to the conversion plan and were engaged in a rent strike. The stipulation provided, inter alia, for an end to the rent strike, a consent by the tenants to the co-op conversion plan and the payment of a legal fee to the tenants’ attorney, as aforesaid.
The ethical problems addressed in the prior decision were: (a) it was not evidence that the tenants were aware of the amount of the fee because the fee was set forth in a separate letter agreement, not annexed to the stipulation of settlement, (b) the separate letter agreement was signed only by the landlord and the tenants’ attorney, (c) the tenants’ attorney was being paid by his adversary and (d) the fee was so large ($100,000), it might constitute a windfall.
Although every case is unique, the issues at bar concern a common practice by attorneys who represent tenants in buildings in the ever-increasing process of conversion from rental to cooperative status, which practice raises the same ethical problem identified at (c) above: that practice is the payment of the tenants’ attorney’s fee by the adversary, the sponsor of the conversion plan.
In virtually every conversion of a rental building to a cooperative or condominium status, the attorney who is retained by the rental tenants (who are solicited to subscribe to purchase their apartments as part of the conversion plan) is inevitably paid a substantial (one might say generous) fee by the sponsor of the conversion plan, in the event the tenants’ *793 association approves the plan. If, on the other hand, the conversion plan is rejected by the tenants or if it is not approved by the Attorney-General’s office, the tenants’ attorney must look solely to his clients for his fee.
The foregoing is significant in that the fees paid to attorneys by tenants’ associations are usually a small fraction of the fees paid to them by sponsors as part of a successful conversion.
The fact that the fee is paid by the adversary, and in a greater amount, places the interests of the tenants’ attorney in conflict with those of his clients. Those same clients, who are entitled to the undivided loyalty of their attorney, may have that loyalty diminished by that compromising influence.
It is a questionable practice, at best, for an attorney to accept a fee from one other than his client, even if disclosure is full and consent is obtained. However, when the tenants’ attorney negotiates a $100,000 legal fee to be paid to him by the adverse party as a part of an over-all settlement, serious ethical questions are raised, regardless of "consent”. It is also highly unlikely that a relative unsophisticated group of tenants would be sufficiently aware of their rights and the implications of this fee arrangement to be capable of informed consent (Matter of Young, 188 App Div 538). The practice of allowing settlements to include a fee arrangement between the tenants’ attorney and the adverse party is contrary to the Code of Professional Responsibility and the holding of the New York State Court of Appeals in Matter of Kelly (23 NY2d 368 [1968]). Speaking directly to the issues of attorney disclosure and client consent, the court held in Kelly that an attorney may not place himself in a position where conflicting interests may inadvertently affect, or give the appearance of affecting, his fiduciary responsibility to his client(s).
In Kelly (supra), the court questioned the vigor with which an attorney would represent a claimant while receiving payment for other unrelated work from the adverse party. That court also addressed itself to the ethical question involved herein, and held, where a lawyer represents parties whose interests conflict as to the particular subject matter, the likelihood of prejudice to one party may be so great that misconduct will be found despite disclosure and consent (see, Attorneys-Conflicting Interests, Annot., 17 ALR3d 835, 843-849; Matter of Sale, 248 App Div 402, 405; Matter of Gilchrist, 208 App Div 497).
*794 The professional judgment of an attorney must be free of compromising influences (Code of Professional Responsibility EC 5-1). In a circumstance, such as the one at issue where (a) a substantial fee is offered to the tenants’ attorney as a part of the settlement of an adversarial controversy and (b) the settlement provides for the consideration sought by the adversary (in this case, the payment of rent and the consent to a cooperative conversion), it is clear that the tenants’ attorney is subject to a substantial influence which is contrary to the interests of his clients.
Code of Professional Responsibility EC 5-22 provides: "Economic, political, or social pressures by third persons are less likely to impinge upon the independent judgment of a lawyer in a matter in which he is compensated directly by his client * * * On the other hand, if a lawyer is compensated from a source other than his client, he may feel a sense of responsibility to someone other than his client.”
This court is aware that the practice involved in the case at bar is considered custom, and any change may significantly alter the practice of landlord-tenant and cooperative conversion law, however, this court will not "look the other way” regarding the serious ethical conflicts involved simply because they may have been tolerated in the past.
Just as this State’s high court addressed the problems arising out of what had been "custom” in insurance claims practice (Matter of Kelly, supra, at 376), this court feels that the ethical dilemmas faced by counsel and the courts in the practice of landlord-tenant and cooperative law must be clarified and brought within the scope of the Code of Professional Responsibility.
Code of Professional Responsibility DR 5-107 does permit an attorney to accept compensation from one other than the client (provided there is consent and full disclosure), but that rule does not go so far as to permit the fee to be paid by the adversary. To do so would violate the ethical consideration which the rule is designed to implement. (Code of Professional Responsibility EC 5-1.)
Code of Professional Responsibility EC 5-1 provides: "The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his *795 loyalty to his client”. This rule does not require that a tenants’ association (or individual tenants) cannot be compensated for their past or anticipated legal expenses, but if such an arrangement is to adhere to ethical standards the compensation must be paid to the clients (the tenants’ association), who will then deal with their attorney "face to face” regarding the payment of his fee. In the case at bar, this attorney has negotiated directly with the adversary and payment is made directly from the adversary to him. It is inconceivable that such a practice is in the best interest of the public or the profession.
Although this court is reluctant to interfere with the relationship between counsel and his clients, it is clear that the nature of the fee arrangement places the tenants’ attorney in conflict with the interests of his clients, and requires that some affirmative step be taken, particularly in light of this court’s determination of August 4, 1986. In addition, it is apparent from the failure to notify the tenants pursuant to the order of August 4, 1986, that they may be suffering from an infirmity of knowledge.
In this court’s prior determination of August 4, 1986, this court deemed the $100,000 fee to be part of the consideration paid to the tenants and, therefore, their property. Counsel was to be paid his fee only upon the written consent of each tenant.
The prior order called for an order to be settled which would provide for notice to the tenants which would include a full explanation of the fee arrangement, a copy of the fee agreement, and a copy of this court’s order of August 4, 1986.
The attorney for the tenants has failed to settle an order, has failed to notify his clients of the substance of that decision and order, and has failed to serve a copy of it upon them as provided therein. On the basis of legal ethics and public policy, this court will not approve the present fee arrangement.
The foregoing requires that his court fashion a remedy to protect the tenants’ interests and to assure that the fee to be paid to the tenants’ attorney is appropriate.
CPLR 909 limits attorneys’ fees in class actions to those fees awarded by the court. While not a "class action” within the letter of CPLR 908 and 909, the proceedings at bar and cases involving large groups of tenants do concern a "class” whose interests should receive the court’s protection in any settle *796 ment. In its decision of August 4, 1986 this court called attention to its fiduciary duty:
"The circumstances here are not unique. Civil Practice Law and Rules, Article 9, "Class Actions”, was enacted by the legislature to address the problems posed by similar class action litigation. While it is true that these consolidated proceedings were not brought in a class action form, the procedures set for compromise and the fixing of attorney’s fees in Article 9 are more compatible with counsel’s duty to his clients, as provided for in the Code of Professional Conduct, than the procedure apparently adopted here.
"CPLR Rule 908 provides that no class action may be compromised without notice of the proposed settlement being given to all members of the class.
"As attorney for the individual tenants Mr. '_’ does
have the authority to compromise, but not to fix the fee to be paid to him without notice to and approval of each of his clients.
"In the Practice Commentaries, Judge McLaughlin states, 'Rule 908 is modeled on Federal Rule 23 (e) and has the salutary effect of discouraging collusive settlements of class actions. C908.1.’ ”
Indeed, the Federal courts have held that in the settlement of class actions and civil rights suits, attorneys may not negotiate or collect fees from the adverse party as part of a settlement, rather, it is within the discretionary power of the court to determine fees. In the case at bar, the protection of rights and the assertion of grievances are involved, and the Federal practice of barring direct fee negotiation with an adverse party adheres more to the spirit of the Code of Professional Responsibility than the current practice of direct fee negotiation. Under the Federal system where a negotiated settlement is presented to the court along with counsel’s proposed fee, the reviewing Judge also assumes a fiduciary responsibility for all the plaintiffs. (Jones v Amalgamated Warbasse Houses, 97 FRD 355, 359 [US Dist Ct, ED NY 1983], reciting class action and civil rights settlement review standards enunciated in City of Detroit v Grinnell Corp., 560 F2d 1093, 1099 [2d Cir 1977] and Grunin v International House of Pancakes, 513 F2d 114, 123 [8th Cir 1975], cert denied 423 US 864 [1975].)
While this court favors negotiated settlements, it also favors *797 the Federal practice of balancing the considerations of judicial economy with its fiduciary responsibility to the tenants.
"[W]hen reviewing a class action settlement the District Court also is ' "a fiduciary who must serve as a guardian of the rights of absent class members.” ’ ” (Jones v Amalgamated Warbasse Houses, supra, at 359, quoting City of Detroit v Grinnell Corp., supra, at 1099, quoting Grunin v International House of Pancakes, supra, at 123.)
The standard of review embodied in Federal Rules of Civil Procedure, rule 23 (e) and CPLR 908, modeled on the Federal rule, in either approving or rejecting a settlement are:
1) Presence of collusion;
2) Counsel’s experience in handling similar cases;
3) The lawyer’s time involved; and
4) Objections of class members.
Guided by this concept, this court finds that to this date there has been inadequate notice to the tenants as to counsel’s fee in comparison to their recovery and the value of their "insider” rights. Counsel’s actions have not been in compliance with this court’s order of August 4, 1986 requiring adequate notice.
Beyond a failure of adequate notice there is also a question as to whether this fee paid by the sponsor is out of line compared to the work performed. CPLR 909 limits attorneys’ fees in class actions to a reasonable fee, codifying the concept of avoiding windfalls. (Washington Fed. Sav. & Loan Assn. v Village Mall Townhouses, 90 Misc 2d 227 [1977].)
The Association of the Bar of the City of New York has recommended that New York courts "follow the Federal Practice of basing any such award on the lawyers time involved, the quality of his service to the class and the extent of the benefit received by class members.” (Special Committee on Consumer Affairs of the Association of the Bar, Proposed Class Action Legislation in New York, 28 Record 481, 490 [1973].) Since that report was issued, the United States Court of Appeals has laid out a standard for determining attorneys’ fees based on the premise that the purpose of the fee is to avoid, for the sake of the court’s integrity and the integrity of the legal profession, the appearance of a "windfall fee”. (City of Detroit v Grinnell Corp., 560 F2d 1093, supra.) Citing Grinnell, the Supreme Court of this State has stated that: "In *798 awarding attorney’s fees for prosecuting class actions, the court must determine how many hours were spent in what manner by which attorneys, the attempt to value these services by fixing the reasonable hourly rate for the time of the attorneys. The valuation process requires definite information, not only as to the way in which the time was spent (discovery, oral argument, negotiation, etc.) but also as to the experience and standing of the various lawyers performing each task (senior partner, junior partner, associate, etc.). (See Lindy Bros., supra, p 167; Grinnell, supra, p 471.) Thus, every plaintiff’s lawyer seeking fees must be able to show the court as much documentation as possible concerning every hour of legal services for which he seeks remuneration. An attorney’s inability to do so will automatically put into question the good faith of his claim, and virtually destroy his chances for full compensation. (See Liebman v Petersen Coal & Oil Co., 63 FRD 684, 702.) The court then multiplies the number of hours by the hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation.” (Washington Fed. Sav. & Loan Assn. v Village Mall Townhouses, supra, at 230-231.)
As aforesaid, it was with these considerations of ethics and fee award in mind that this court in its prior determination deemed the fee which was to be paid to the tenants’ attorney to be, in fact, the property of the tenants. Once the tenants understood that the $100,000 belonged to them, they could consent to its release.
This motion has not brought forth any consent, indeed, there has been no response at all from the tenants. It should be noted that the papers upon which the motion is based continue to fail to disclose to the tenants the substance of the court’s prior determination, in addition, the motion does not set forth a copy of that order or a copy of the fee arrangement as required by that order. In view of the continuing failure to disclose, the lack of a response by the tenants is understandable.
In light of both the fee arrangement and this court’s prior determination, it is clear that a conflict of interest exists which requires that the tenants’ rights be adequately protected.
*799 Accordingly, the motion is denied and the court hereby directs that counsel (a) retain the fee in escrow for a reasonable time until a determination is made by the court as to the counsel’s fee pursuant to CPLR article 9 or (b) return the fee to his clients and negotiate with them directly on the question of the payment of his fee.